IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**THOMAS FOWLER,**                                        *

                                                                        *

   *Plaintiff*,                                             *

   v.                                                            *                Civil Case No: 1:21-cv-02430-JRR

**TENTH PLANET, INC., et al.,**

                                                                        *

   *Defendants.*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS AND/OR FOR OTHER RELIEF AS SPOLIATION SANCTIONS

On February 24, 2023, Defendants, Tenth Planet, Inc. ("Tenth Planet") and Justine Zegna ("Zegna") (collectively, "Defendants"), filed a Motion to Dismiss and/or For Other Relief As Spoliation Sanctions. (ECF No. 23). On March 10, 2023, Plaintiff Thomas Fowler ("Plaintiff" or "Fowler") filed his Opposition. (ECF No. 25). Also on that date, U.S. District Judge Julie R. Rubin referred this case to the undersigned for a Report and Recommendation on Defendants' Motion pursuant to Local Rule 301.5.b. (ECF No. 24). On March 27, 2023, Defendants filed their Reply. (ECF No. 28). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). As set forth more fully below, I recommend that Judge Rubin deny Defendants' Motion.

## I.     Background

Plaintiff brings this wage and hours case under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., and its Maryland counterparts, the Maryland Wage Payment and Collection Law and the Maryland Wage and Hour Law, alleging that he is due overtime pay. (ECF No. 1 at p. 1). Central to the case is whether Plaintiff was employed as a "line cook" for a portion of his employment when first hired in May 2019 so as to entitle him to overtime pay for hours worked in excess of forty hours per week during such time, or whether Plaintiff was only ever employed

as a "kitchen manager" so as to exempt him from overtime pay for the duration of his employment. (ECF No. 23-2 at p. 2; ECF No. 25 at p. 2).[1]  Although Plaintiff does not deny that he became a kitchen manager at some point during his employment, he contends that prior to that time, he was a line cook entitled to overtime that was not paid.  (ECF No. 25 at p. 2).  According to Plaintiff, the time range at issue occurred between May 2019 and mid-October 2019.  (ECF No. 25 at p. 2). Plaintiff's employment with Defendants lasted until November 2020.  (ECF No. 1 at p. 5, ¶ 26).

The Complaint in this matter was filed on September 22, 2021, and served on Defendants on November 8, 2021.  (ECF Nos. 1, 4, & 5).  According to Plaintiff, Defendants first served discovery requests on Plaintiff on September 16, 2022, which, among other things, sought text messages between Plaintiff and Zegna.  (ECF No. 25 at p. 14; ECF No. 25-8 at p. 2).  Plaintiff, however, had his phone stolen "sometime in July or August of 2022" after leaving it in his car unattended following a long work shift.  (ECF No. 25-2 at p. 3, ¶¶ 27–33).  Plaintiff explains that he had not "backed up" his phone prior to the theft, nor did he otherwise have a copy of relevant text messages between him and Zegna.  *Id.* at pp. 2–3, ¶¶ 22–26.  Plaintiff does not deny that text messages between himself and Zegna existed on his phone at the time of the theft, but he disputes the importance or relevance of the "missing" text messages.  Zegna herself has copies of text messages with Plaintiff starting in approximately December 2019, leaving an approximate six-month gap in text messages from May 2019 to November 2019.  This gap period includes the time during which Plaintiff was allegedly employed as a line cook.[2]

---

[1] When the undersigned cites to specific page numbers, the citation is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

[2] When she learned of the Complaint in this matter in October of 2021, Zegna worked with her counsel to preserve those text messages still present on her phone and that might still be present on the phones of other kitchen managers, which, by that time, only went back as far as December 2019.  (ECF No. 23-5 at pp. 5–6, ¶¶ 18–21).

Defendants contend that the missing text messages were the only documentary evidence from the relevant time period and likely would corroborate, in Plaintiff's own words, Defendants' assertion that Plaintiff was a kitchen manager—and thus exempt from overtime—during his entire employment.  (ECF No. 23-2 at pp. 19–20).  This is based both on Zegna's recollection and the recollection of one other kitchen manager who was a coworker of Plaintiff during the relevant time period.   (ECF No. 23-5 at pp. 3–6, ¶¶ 9–22; ECF No. 23-6 at p. 3, ¶¶ 10–11).   Plaintiff acknowledges that he and Zegna exchanged text messages throughout his employment, but his recollection is that there were no more than ten text messages exchanged; furthermore, Plaintiff contends that any substantive text messages (1) post-dated the May 2019–October 2019 period prior to his promotion to kitchen manager, (2) concerned routine matters like "on-boarding," (3) did not include other kitchen managers, and (4) were therefore inconsequential to the case.  (ECF No. 25-2 at p. 2, ¶¶ 11–14).

Based on Defendants' assertions of bad faith on Plaintiff's part for failing to preserve the text messages in a more robust way than simply storing them on his phone, and Defendants' argument that their inability to use these missing text messages greatly prejudices their case, Defendants have asked the Court to dismiss the case or, alternatively, enter judgment in their favor. (ECF No. 23-2 at p. 23).

## II.    Legal Standard

Rule 37(e) specifically addresses the failure to preserve electronically stored information ("ESI") such as the text messages at issue here.[3]   To trigger Rule 37(e), four criteria must be met: (1) the party was under a duty to preserve the ESI at issue; (2) the ESI at issue was not preserved;

---

[3] "[T]ext messages constitute ESI . . . ." *NuVasive, Inc. v. Kormanis*, No. 1:18CV282, 2019 WL 1171486, at *6, n. 8 (M.D.N.C. Mar. 13, 2019) (quoting *Keim v. ADF Midatlantic, LLC*, No. 12-CV-80577-MARRA/MATTHEWMAN, 2016 WL 7048835, at *3 (S.D. Fla. Dec. 5, 2016)) (internal quotation marks omitted).

(3) the loss of the ESI was due to the party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e); *see Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2483800, at *4 (E.D.N.C. June 7, 2017) (other citations omitted). If these four criteria are met, Rule 37(e) offers two alternative paths:

> The first avenue, Rule 37(e)(1), requires a court to make a finding of prejudice before sanctions may be warranted. The second avenue, Rule 37(e)(2), requires a court to make a finding that a party acted with the *intent* to deprive the opposing party of the ESI prior to imposing sanctions.

*In re: Ethicon, Inc.*, No. 2:12-CV-00497, 2016 WL 5869448, at *3 (S.D.W. Va. Oct. 6, 2016) (emphasis in original); *see also Mod. Remodeling v. Tripod Holdings, LLC,* No. CCB-19-1397, 2021 WL 3852323, at *10 (D. Md. Aug. 27, 2021). The kind of prejudice sufficient to trigger Rule 37(e)(1) occurs "when, as a result of the spoliation, the party claiming spoliation cannot present 'evidence essential to its underlying claim.'" *Al-Sabah v. Agbodjogbe*, No. ELH-17-730, 2019 WL 4447235, at *5 (D. Md. Sept. 17, 2019) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522–23 (D. Md. 2010)). To justify the more severe sanctions of Rule 37(e)(2), as Defendants seek here,[4] the moving party must demonstrate that the failure to preserve was motivated by an intent to deprive the moving party of the use of the information in the litigation. *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, SAG-18-3403, 2020 WL 1809191, at *4 (D. Md. Apr. 9, 2020). Negligent or even grossly negligent behavior will not suffice. Fed. R. Civ. P. 37(e) 2015 Advisory Committee Notes; *Mod. Remodeling, supra* at *10.

---

[4] Defendants argue that only the sanctions of dismissal or judgment entered in their favor are appropriate, and they argue that even an adverse inference instruction would fall short as a remedy. (ECF No. 23-2 at p. 23, n. 3). Defendants suggest that if the Court is unwilling to dismiss the case, it should, at a minimum, give an adverse inference instruction and that "Plaintiff should also be prevented from disputing Defendants' evidence of the content of the May 2019 to December 2019 text messages." *Id.* In the Court's view, all of those alternatives fall under the purview of Rule 37(e)(2) and therefore require a finding that Plaintiff acted with an intent to deprive.

The burden of proof is on the party seeking sanctions, and the standard of proof in the Fourth Circuit appears to be "clear and convincing" evidence where, as here, relatively harsh sanctions are sought. *Id.* "Courts have broad discretion when deciding to impose sanctions under Rule 37(e)." *Id.* (citations omitted).  This is true even if the moving party demonstrates prejudice under Rule 37(e)(1) or "intent to deprive" under Rule 37(e)(2). *Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 845 (S.D.W. Va. 2018).

Notably, Rule 37(e) was amended effective December 1, 2015, and, with regard to ESI-related spoliation, according to its drafters, "forecloses reliance on inherent authority . . . to determine when certain measures should be used." Fed. R. Civ. P. 37(e) 2015 Advisory Committee Notes.  In that way, compared to the previous version of the Rule, the amended version of Rule 37(e) "significantly limits a court's discretion to impose sanctions for the loss or destruction of ESI[.]" *Eshelman*, 2017 WL 2483800, at *4 (quoting *Jenkins v. Woody*, No. 3:15-CV-355, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017) (citation omitted)).  This is important because, in the absence of a finding of intent to deprive, it forecloses imposing the sanctions Defendants urge here: dismissal or, at least, an adverse inference instruction coupled with precluding Plaintiff from disputing Defendants' evidence regarding the content of the missing text messages.  Fed. R. Civ. P. 37(e)(2); (ECF No. 23-2 at p. 23, n. 3).

The Court pauses to emphasize the intent behind the most recent changes to Rule 37(e) in 2015 that created the exclusive analytical framework to be used in cases of alleged spoliation of ESI, such as the missing text messages at issue here.  The pre-2015 caselaw on the authority for and availability of particular sanctions for spoliation of ESI and what level of intent sufficed lacked clarity and consistency.  As the Advisory Committee makes plain, the 2015 amendments to Rule 37(e) were specifically designed to remedy that lack of clarity and consistency.  Attempts at a

5

wholesale reconciliation of pre-amendment jurisprudence with post-amendment Rule 37(e) risks a reinstatement of the *ad hoc* approach that the Advisory Committee sought to correct, where, under the talisman of "inherent authority," a court was free to grant or deny any potential sanction based on any state of mind from negligence to intentional bad faith. That said, it is certainly true (as some post-amendment cases point out) that some pre-amendment decisions approach ESI spoliation in a way consistent with current Rule 37(e), and such decisions remain helpful in applying Rule 37(e)(1) and (2). *See, e.g., McCoy v. Transdev Servs., Inc.,* No. DKC-19-2137, 2021 WL 1215770, at *1–3 (D. Md. Mar. 31, 2021) (citing certain pre-amendment decisions as support for the application of post-amendment Rule 37(e)). However, to the extent that such pre-amendment cases are explicitly inconsistent with current Rule 37(e)—such as justifying dismissal or an adverse inference instruction on conduct falling short of a specific finding of intent to deprive—the Court no longer views them as persuasive in addressing spoliation of ESI.

## III.   Analysis

As an initial matter, the Court agrees that the four threshold criteria necessary to potentially implicate Rule 37(e) remedies have been met. It is clear the duty to preserve the text messages then present on Plaintiff's phone attached *at the very latest* at the time suit was filed in September 2021 given that they were the primary form of communication between Plaintiff and Zegna during his employment. This was further made clear in December 2021 when counsel informally discussed that the expected scope of the discovery would likely include some text messages and emails between the parties. (ECF No. 23-11 at p. 2). It is also clear that, notwithstanding this, the text messages were not preserved by the time they were formally requested in discovery in September 2022.

As for the reasonableness of Plaintiff's preservation efforts, the Court's assessment of those efforts is, in part, a function of the extent to which the particular missing ESI could be anticipated to be important in the case.  There will be cases where text messages are not central to the dispute such that the reasonable steps to preserve them might be no greater than to refrain from permanently deleting them from one's phone, as Plaintiff says he did here.[5]  However, where Plaintiff was on notice that text messages, as the primary form of "written" communication between him and his employer, would be important evidence of the nature and extent of Plaintiff's job duties at various points during his employment (a central issue in the case), it was not reasonable to simply maintain those text messages only on his phone without at least verifying that they were being backed up to a cloud service or otherwise taking affirmative steps to create a copy given the not uncommon occurrence of a phone getting damaged, lost, or stolen.  This is especially so when the data loss occurs well into the litigation, when a party has been represented by counsel, and where, as here, a party is not a stranger to the litigation process and the duties that surround it.[6]  Ironically, Plaintiff's counsel himself emphasized the importance of text messages during the time period at issue when criticizing Defendants' production before Plaintiff's phone was stolen, yet no steps were taken by Plaintiff to preserve then-existing text messages in his possession from this same time period beyond simply refraining from deleting them from his phone, their sole remaining depository.  (ECF No. 23-2 at p. 18 (quoting Plaintiff's draft motion to compel)).

---

[5] As the Advisory Committee makes clear, preservation efforts—like all aspects of discovery—are also viewed through the proportionality lens. Fed. R. Civ. P. 37(e) 2015 Advisory Committee Notes ("Another factor in evaluating the reasonableness of preservation efforts is proportionality.").

[6] The Advisory Committee indicates that "[t]he court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with perseverance obligations than others who have considerable experience in litigation."  Fed. R. Civ. P. 37(e) 2015 Advisory Committee Notes.  Although Plaintiff "has extremely limited exposure to using iCloud . . . ," such limited exposure is not an excuse for a represented and litigation-familiar party failing to seek out safeguards for ESI preservation in addition to simply not deleting the text messages from a phone.  (ECF No. 25 at p. 20).

Finally, as to the availability of obtaining the missing text messages from another source, Plaintiff does not suggest that he has such a potential source within his custody or control, but he questions whether Defendants have exhausted all available avenues to recover the missing text messages. (ECF No. 25 at pp. 21–22). For her part, as noted above, Zegna attests that from the time she was made aware of this case, she has worked with her attorneys on recovering all relevant text messages but has been unable to obtain those from either her own phone or the phone of at least one other kitchen manager for the period at issue. Although Zegna does not detail those precise efforts, the Court assumes that Zegna and her counsel have conducted a reasonable inquiry pursuant to the duties imposed by Rule 26(g).[7] Thus, the Court is satisfied that the missing text messages are not available from another source, and the Court will go on to consider whether sanctions under Rule 37(e)(1) or, as Defendants request, Rule 37(e)(2) are appropriate.

Sanctions under Rule 37(e)(1) require some finding of prejudice, and, if prejudice is found, the Rule calls for the imposition of a sanction no greater than necessary to cure such prejudice. Defendants make several arguments regarding prejudice. First, they argue that the text messages they *do* have (i.e., those recovered from Zegna's phone from December 2019 forward) firmly establish that Plaintiff was a kitchen manager during that period, making it reasonable to posit that the missing text messages would be of a similar nature and would likewise go far in establishing that Plaintiff was a kitchen manager during the May 2019–October 2019 period at issue. (ECF No. 23-2 at pp. 4–5, 19–20). Defendants go even further, with both Zegna and another kitchen manager attesting that the missing text messages *would* establish that Plaintiff was a kitchen manager from the beginning of his employment based both on the particular duties and

---

[7] The Court does not find that the facts support some lapse on the part of Zegna in not having the missing text messages. Zegna's duty to preserve arose—at the earliest—upon the filing of the lawsuit, at which point she attests that she worked with her attorneys to preserve relevant text messages to the best of her ability, which included checking with other kitchen managers. (ECF No. 23-5 at pp. 5–6, ¶¶ 18–21).

responsibilities discussed, as well as the inclusion of Plaintiff in the "group chat" with the other kitchen managers.  (ECF Nos. 23-5 at p. 6, ¶ 22; 23-6 at p. 3, ¶ 11).

For his part, Plaintiff's recollection is that while he does not recall the specific content of the missing text messages, he did not exchange more than ten text messages during the May 2019–October 2019 period, that the topics did not include kitchen manager duties, and that the few text messages exchanged were about "scheduling, basic onboarding information and otherwise just exchanging general pleasantries."  (ECF No. 25-2 at p. 2, ¶¶ 11–14).  Thus, Plaintiff contests any inference that text messages from the later period when he was a kitchen manager make it likely that the missing text messages from the period at issue would be similar.  (ECF No. 25 at p. 10).  Further, Plaintiff points to specific text messages produced during the later time period that suggest his promotion to kitchen manager was later in his employment, such as a text message that is seemingly the first time he ordered ingredients for the kitchen, yet this text message was not sent until February 2020.  *Id.* at p. 12.  Plaintiff also argues that evidence other than text messages support his contention that he was first hired as a line cook before his later promotion to kitchen manager, including the Facebook posting for the job opening (indicating Defendants were looking to hire a line cook), Plaintiff's own lack of experience as anything but a line cook (making it less likely that he would be hired as a kitchen manager on day one), and that Defendants' first wage offer (though not their ultimate offer) was more consistent with a line cook.  *Id.* at pp. 12–14.

The Court has no trouble finding that the missing text messages are relevant to the dispute, since they would have some tendency to prove whether Plaintiff was initially hired as a line cook or kitchen manager.  However, the Court cannot conclude that Defendants have carried their burden of showing prejudice of a type sufficient to warrant any discovery sanction.  On the record before the Court, the evidence as to which position Plaintiff was initially hired for is mixed.  More

importantly, the evidence as to whether the missing text messages would have supported Defendants or Plaintiff is mixed.  As both sides also concede, the missing text messages are not the only potential evidence on this issue.  Accordingly, the Court cannot conclude that they are "essential to [a party's] underlying claim.'"  *Al-Sabah*, 2019 WL 4447235, at *5 (D. Md. Sept. 17, 2019) (quoting *Victor Stanley, Inc.*, 269 F.R.D. at 522–23).

The Court also concludes on the record before it that Defendants have not carried their burden of showing an "intent to deprive" by clear and convincing evidence, a finding required to justify the sanctions they seek under Rule 37(e)(2).  As noted above, Plaintiff should have taken additional steps to preserve the missing text messages considering the circumstances and timeline of this case, rather than rely on their continuing availability from their sole repository—Plaintiff's phone.  Such a failure under such circumstances may amount to negligence, but negligence is insufficient to establish an intent to deprive, especially when not coupled with any affirmative conduct on Plaintiff's part to occasion the loss, other than being the victim of a theft.  While forgetting to lock one's vehicle after a long workday may have made such a theft more likely, none of the surrounding circumstances suggest that this lapse was intentional.  *See Fuhs v McLachlan Drilling Co.*, 2018 WL 5312760 at *14 (W.D. Pa. Oct. 26, 2018) (cell phone data lost due to the phones being lost, stolen or damaged, coupled with no evidence of intentional deletion, insufficient to establish an intent to deprive).

## IV.    Conclusion

Given that Defendants have not carried their burden, the undersigned recommends that no sanctions are appropriate.  Rather, the issue of the missing text messages should be dealt with according to the usual rules of evidence, with Judge Rubin being in the best position to decide the

extent to which the parties can introduce evidence and testimony regarding the missing text messages and the circumstances of their unavailability.

NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Date: <u>March 29, 2023</u>                              _____/s/_____
                                                                         J. Mark Coulson
                                                                         United States Magistrate Judge