**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| |
|---|
THOMAS FOWLER |
    Plaintiff |
v. |    Case No. 1:21-cv-02430-JRR
TENTH PLANET, INC., et al. |
    Defendant |

**DEFENDANTS', TENTH PLANET, INC. AND JUSTINE ZEGNA,**
**OPPOSITION TO PLAINTIFF'S, THOMAS FOWLER, MOTION**
**FOR ATTORNEYS' FEES AND COSTS**

Tenth Planet, Inc. ("Tenth Planet") and Justine Zegna ("Ms. Zegna") (collectively, "Defendants"), in the above-entitled action, by and through their undersigned counsel, hereby oppose the Motion for Attorneys' Fees and Costs ("the Motion") filed by Plaintiff, Thomas Fowler ("Plaintiff" or "Mr. Fowler"), and respectfully request that this Court make a substantially reduced award of attorneys' fees and costs to Plaintiff. As grounds therefore, Defendants state the following:

**I.       STATEMENT OF FACTS**

On September 22, 2021, Plaintiff filed his Complaint, alleging violations of the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL") during the time he worked at Blacksmith Bar & Restaurant ("Blacksmith"), which is owned by Defendant, Tenth Planet (Ms. Zegna, in turn, owns Tenth Planet). ECF No. 1. In the Complaint, Plaintiff took the position that he was "hired and worked as a cook." ECF No. 1 ¶ 27.

Knowing that to be false, on November 22, 2021, before even filing an Answer, Defendants sent a letter to Plaintiff's counsel noting that Plaintiff had been hired and worked as a manager.

Exhibit A – Letter from Feinberg to Hoffman, Nov. 22, 2021.  The letter noted Plaintiff's job duties, that he was paid in the same manner as other managers (and different from the manner in which line cooks were paid), the background on Plaintiff's shift from hourly pay to salary, the fact of Plaintiff's representations to employees that he was their manager.  *Id.* at 1-2.  The letter closed by offering a nuisance settlement in an effort to avoid the costs of litigation.  *Id.* at 3.

Following the pleadings stage and in accordance with Judge Blake's memorandum to counsel, on December 13, 2021, Defendants timely requested that Plaintiff preserve evidence that bore upon the parties' competing claims.  ECF No. 8; Exhibit B – Email from Feinberg to Hoffman, Dec. 13, 2021.  Indeed, Defendants, through counsel, notified Plaintiff that although "[Defendants did not] anticipate non-standard discovery of electronically stored information [would] be necessary.  There will likely be some text messages and emails . . . ."  Exhibit B (emphasis added).

On December 14, 2021, Plaintiff's counsel emailed Defendants' counsel stating "[w]ith respect to the letter [of November 22, 2021], I will send you a more detailed response but suffice it to say, my client does not agree that he was an exempt supervisor at any time during his employment."  Exhibit C – Email from Hoffman to Feinberg, Dec. 14, 2021.  Plaintiff's counsel never provided the "more detailed response" promised in the December 14, 2021 email, and Plaintiff did not provide a counter-offer for settlement.  Exhibit D – Declaration of Matthew Feinberg ¶ 5.

On January 31, 2022, Defendants' counsel emailed Plaintiff's counsel again regarding settlement.  Exhibit E – Email from Feinberg to Hoffman and Liew, Jan. 31, 2022.  The email attached written statements from Tenth Planet employees confirming that Plaintiff was a manager during his employment with the company and noted that Plaintiff had prepared a mortgage

application during his employment on which he disclosed his job title as "Manager."[1]  *Id.*
Defendants' counsel noted that Plaintiff had not provided the "more detailed response" to
Defendants' proof that Plaintiff was a manager and re-iterated the prior nuisance settlement offer
originally made on November 22, 2021.  *Id.*  Plaintiff did not respond or make a counter-offer.
Exhibit D ¶ 6.  From Plaintiff's counsel's billing records, it does not appear that the offer was
relayed or written statements provided to Plaintiff.  ECF No. 73-2 at 8.

Meanwhile, the parties engaged in discovery.  On January 19, 2022, Plaintiff served
interrogatories and requests for production of documents via email.  Exhibit D ¶ 7.  On February
15, 2022, Defendants requested an extension of the deadline for responding to March 11, 2022,
and subsequently an additional extension to March 14, 2022.  *Id.* ¶¶ 8-9.  Defendants provided
responses shortly after midnight on March 15, 2022.  *Id.* ¶ 10.  On March 17, 2022, Defendants
provided additional responsive documents.  *Id.* ¶ 11.  On April 6, 2022, Plaintiff raised a discovery
dispute, requesting production of some documents and re-production of others.  Exhibit F – Email
String Between Liew and Feinberg, Apr. 6, 2022-Apr. 12, 2022.  Plaintiff's counsel noted that
Plaintiff had "some concerns regarding certain objections and responses to our written discovery,
but I will address in a follow up email."  *Id.*  Defendants' counsel agreed to supplement the
production when the documents were received.  *Id.*  Plaintiff's counsel did not sent the "follow up
email."  Exhibit D ¶ 12.

Despite Defendants' counsel's promise to provide supplementation of documents, on April
13, 2022, Plaintiff served a 25-page motion to compel answers to interrogatories and 10-page
motion to compel first set of requests for production of documents.  Exhibit G – Email from Liew

---

[1]      It appears the mortgage application was not attached to the email at the time.  However,
the document was subsequently produced in discovery.  Exhibit F – Plaintiff Mortgage Application
Excerpt.

to Feinberg, Apr. 13, 2022, with attachments.  The motions raised a number of purported issues not previously disclosed to Defendants' counsel and about which Plaintiff's counsel made no effort to "resolve informally (by oral or written communications)," as required by the Local Rules of this Court.  LCvR 104(8) (service of a motion to compel is permissible only after the party "has been unable to resolve" the discovery dispute informally).  On April 19, 2022, Defendants' counsel sent an email to Plaintiff's counsel attempting to resolve the discovery dispute before being forced to draft an opposition to the motions to compel.  Exhibit H – Email from Feinberg to Liew, Apr. 19, 2022.  On April 28, 2022, the parties engaged in a meet and confer regarding discovery and reached agreement with regard to a number of issues.  Exhibit I – Email from Liew to Feinberg, Apr. 28, 2022.  On April 29, 2022, Defendants' counsel reached out to Plaintiff's counsel by email to confirm that the parties had resolved their disputes.  Exhibit J – Email from Kreiser to Liew, Apr. 29, 2022.  Despite the fact that Plaintiff's counsel was working on this case on that date, Plaintiff's counsel did not respond.  Exhibit D ¶ 14; ECF No. 73-2 at 14.  On May 4, 2022, having received no response to the inquiry, Defendants' counsel submitted an opposition to the motion to compel answers to interrogatories.  Exhibit K – Email from Feinberg to Liew, May 4, 2022, with attachments.  Thereafter, Plaintiff's counsel dropped the discovery dispute.  Exhibit D ¶ 15.

On September 15, 2022, Defendants served written discovery requests on Plaintiff via email.  On October 19, 2022, Plaintiff submitted responses.  The responses, for the first time, acknowledged that Plaintiff was a manager at Blacksmith but claimed that he was promoted to that position in early October 2019.  Exhibit L – Plaintiff Answers to Interrogatories at Ans. to Interrog. No. 6.  This new theory, which contradicted Plaintiff's counsel's prior statement that Plaintiff was never an exempt supervisor, Exhibit C, was raised for the first time after Defendants had made it known that they were unable to produce text messages exchanged between Ms. Zegna and Plaintiff

prior to late Fall/early Winter 2019.

In serving discovery responses, Plaintiff failed to produce any text messages between Ms. Zegna and Plaintiff. It was later discovered that Plaintiff had once had the text messages in his possession; however, he had failed to preserve them and then lost them when his phone was stolen out of his unlocked car in July or August 2022. Exhibit M – Declaration of Thomas Fowler ¶¶ 22-36. Thereafter, the parties engaged in substantial motions practice related to Defendants' Motion to Dismiss and/or for Other Relief as Spoliation Sanctions (ECF No. 23). The exclusive reasons the spoliation motion and associated briefing was necessary is Plaintiff's and his counsel's failure to preserve the text messages when it became clear they were relevant to discovery.[2] Exhibit B.

Only after the spoliation motion was decided did Plaintiff reach out to Defendants' counsel regarding settlement for the first time. Exhibit N – Email String Between Liew and Feinberg, June 19-20, 2023. Defendants' counsel indicated that the parties should try to settle. *Id.* Six weeks later, Plaintiff made its first settlement demand, seeking the maximum possible recovery Plaintiff believed at the time could be awarded, i.e., three times the amount Plaintiff's expert witness claimed was due under Plaintiff's theory of the case. Exhibit O – Letter from Liew to Feinberg, Aug. 2, 2023. After much discussion with Defendants, Defendants' counsel responded on October 30, 2023. Exhibit P – Email from Feinberg to Liew and Hoffman, Oct. 30, 2023. Plaintiff rejected the offer without making a counter-offer. Exhibit Q – Email from Hoffman to Feinberg, Oct. 31, 2023.

---

[2]     Plaintiff committed other discovery failures. Notably, despite Plaintiff's obligation to supplement his interrogatory responses in a timely manner, Fed. R. Civ. P. 26(e)(1)(A), Plaintiff never supplemented the interrogatory responses to disclose his felony conviction for assaulting a police officer. The conviction was well-known to Plaintiff's counsel, as Plaintiff's counsel seeks payment of attorneys' fees related to difficulties communicating with Plaintiff while he was incarcerated. ECF No. 73-2 at 30-31.

As trial approached, Defendants' counsel attempted to encourage Plaintiff to engage in settlement discussions again, without much success. Exhibit D ¶ 17 (describing communications as "like pulling teeth" to encourage Plaintiff's counsel to negotiate). However, eventually Defendants' counsel was able to break through, and negotiations occurred during the week of May 20, 2024. *Id.* ¶ 18. On May 24, 2024 (at 3:37 p.m.), Defendants' counsel presented a best and final offer of $9,336.54 to Plaintiff. Exhibit R – Email from Feinberg to Liew, May 24, 2024. Time was of the essence, because the parties had pre-trial filings (pretrial order, voir dire, jury instructions, verdict sheet) due on May 27, 2024. ECF No. 39. Defendants' counsel noted that, if the offer was accepted, the parties should notify the court of the settlement in order to avoid both the parties and the court from engaging in additional pretrial activities. Exhibit R.

In a response at 7:16 p.m., Plaintiff's counsel accepted the settlement as to amount and the process for determining an attorneys' fees award. Exhibit S – Email from Liew to Feinberg, May 24, 2024, with attachment. Plaintiff's counsel indicated, however, that it was "unwilling to stop work and miss deadlines while the Parties work up a settlement agreement." *Id.* Despite having no authority to issue an offer of judgment, Fed. R. Civ. P. 68 ("a party defending against a claim may serve . . . an offer to allow judgment"), and the parties having no prior discussions regarding an offer of judgment (all prior correspondence had been identified as "settlement" discussions, and an offer of judgment is fundamentally different than a settlement), Plaintiff's counsel "propose[d]" that Defendant issue an offer of judgment, which Plaintiff's counsel spent 1.3 hours drafting that day on Defendants' behalf. *Id.*; *see also* ECF No. 73-2 at 51. Because an offer of judgment would result in a money judgment being entered against Defendants, Defendants acknowledged that the parties had reached a settlement but declined the proposed method of effectuating that settlement. At 8:55 p.m., Defendants' counsel provided a draft settlement agreement which reflected the

agreement of the parties and incorporated the terms included in the offer of judgment.  Exhibit T

– Email from Feinberg to Liew, May 24, 2024, with attachments.

Despite the settlement agreement reflecting exactly what Plaintiff had included in its offer

of judgment, Plaintiff's counsel refused to acknowledge the parties had reached an agreement on

all material terms.  Exhibit D ¶ 23.  The parties worked a substantial number of hours through the

weekend to prepare pretrial submissions.  *Id.* ¶ 24; ECF No. 73-2 at 51-55.  On May 27, 2024,

Defendants' counsel inquired of Plaintiff's counsel, "in the interests of trying to see if there is any

common ground to be reached that could avoid the expense of litigating the motion to enforce

[settlement] and preparing for trial, I am asking what you need to make yourself comfortable with

the settlement agreement process?"  Exhibit U – Email String between Feinberg and Hoffman,

May 27, 2024.  Plaintiff's counsel responded with requests that were already in line with what the

parties had previously agreed to (albeit using slightly different language), and Defendants' counsel

agreed without objection.  Exhibit D ¶ 25.

## II.      LEGAL STANDARD

Generally, a prevailing party is entitled under the FLSA to recover reasonable attorney's

fees, a determination that lies within the Court's sound discretion.  29 U.S.C. § 216(b); *Guillen v.*

*Armour Home Improvement, Inc.*, Civil Action No. DLB-19-2317, 2024 WL 1346838, at *1 (D.

Md. Mar. 29, 2024).  Although there are courts in this district that have indicated that an award of

attorneys' fees is mandatory in FLSA cases, *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 640

(D. Md. 2012), courts maintain the discretion to deny an award of attorneys' fees under certain

circumstances, *see, e.g., Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168

(S.D. Fla. 2003) (denying motion for attorneys' fees in FLSA case where matter resulted in a

nuisance settlement and the case "could have been disposed of by making a few phone calls before

filing suit" and counsel's conduct unnecessarily increased cost of litigation). In those cases where a fee is appropriate, courts apply a reasonableness standard. *Amaya v. Power Design, Inc.*, Civil Case No. 14-00446-JMC, 2018 WL 690838, at *2 (D. Md. Feb. 2, 2018) (citing *Beam v. Dillon's Bus Serv., Inc.*, Civ. No. DKC-14-3838, 2015 WL 4065036, at *5 (D. Md. July 1, 2015)). "A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Ford v. Karpathoes, Inc.*, Civil Action No. ELH-14-00824, 2015 WL 736809, at *5 (D. Md. Feb. 19, 2015) (internal quotation marks omitted) (quoting *Perdue v. Kenny*, 559 U.S. 542, 552 (2010)).

When awarding attorneys' fees in a given FLSA case, courts in this district utilize a three-step process to determine the reasonableness of the award. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the Court determines the lodestar amount, i.e., "'a reasonable hourly rate multiplied in hours reasonably expended.'" *Guillen*, 2024 WL 1346838, at *1 (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008)). The Court's analysis must be guided by twelve factors known as the "*Johnson* factors." *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989)). These include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at *2 (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)). Second, "the Court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.*

(internal quotation marks omitted) (quoting *McAfee*, 738 F.3d at 88) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009)).  And, third, "the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Robinson*, 560 F.3d at 244).

When applying for an award of attorneys' fees, the burden rests with the party seeking fees to establish "the reasonableness of his hourly rate with specific evidence" as well as the reasonableness of the hours expended in pursuit of the case.  *Newport News Shipbuilding and Dry Dock Co. v. Holiday*, 591 F.3d 219, 230 n.12 (4th Cir. 2009) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)); *see also Jones v. Dancel*, 792 F.3d 395, 404 (4th Cir. 2015) (plaintiff "bears the burden of demonstrating that the requested fees are reasonable.") (citing *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97-98 (4th Cir. 1993)).  Specifically, a party seeking fees bears the burden of "'documenting the appropriate hours expended and hourly rates.'" *Ford*, 2015 WL 736809, at *5 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  This means counsel "'should make a good faith effort to exclude from a fee request [any] hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.'"  *Id.* (quoting *Hensley*, 461 U.S. at 434). Indeed, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (internal quotation marks omitted) (quoting *Hensley*, 461 U.S. at 437) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis added by *Copeland* court)).

"A prevailing plaintiff is entitled to recover costs as well, but 'only for reasonable litigation expenses.'"  *Id.* (quoting *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986)).  "The shifting of federal litigation expenses is generally governed by statute." *Hampton v. Am. Plumbing & Sewer,*

*Inc.*, 95 F.3d 1154, 1996 WL 479227, at *1 (7th Cir. Aug. 21, 1996).  The FLSA allows for the recovery of "a reasonable attorney's fee . . . and the costs of the action."  29 U.S.C. § 216(b).  Thus, whether a prevailing party may recover a costs award for a specific item of cost turns on whether that item of cost constitutes a "reasonable attorney's fee" or "costs of the action."  *Id.*

### A.   Calculating the Lodestar Amount

### 1.   Reasonable Hours

Billed hours are included in the lodestar calculation only if they went toward producing material that had a "bearing on the ultimate results obtained."  *Molina v. KP Stoneymill, Inc.*, Civil Action No. GLS-19-3123, 2021 WL 2805838, at *5 (D. Md. 2021); *see also Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 839 (D. Md. 2005) ("In other words, 'plaintiffs are to be compensated for attorney's fees incurred for services that *contribute to the ultimate victory* in the lawsuit.'") (citation omitted) (emphasis added).  As noted above, hours "that are excessive, redundant, or otherwise unnecessary" cannot be included.  *Molina*, 2021 WL 2805838, at *5; *see also Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 178 (4th Cir. 1994) (affirming trial judge's "disallow[al] [of] [Plaintiff's] request for fees and expenses in connection with various items of work that . . . were unnecessary for the prosecution of the litigation."); *Bel Air Plaza LP v. Ross Dress for Less, Inc.*, Civil Action No. CCB-14-2533, 2016 WL 3440191, at *4 (D. Md. 2016) (reducing the hours billed on a brief in half when the attorney was "expected" to be more efficient, the brief was short, and the law and facts were simple).  Time spent conducting "clerical" tasks are also not included when calculating the lodestar. *See Molina*, 2021 WL 2805838, at *6 ("[T]he Court observes a few entries for 'preparing the complaint package' and 'calendaring deadlines' and 'preparing documents for mediation.' These are non-compensable forms of clerical work that have been stricken."); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) ("purely clerical

or secretarial tasks should not be billed at a paralegal rate . . . .").

Time an attorney spends on tasks that a paralegal or assistant could have completed is also stricken as unreasonable.  *See Bel Air Plaza LP*, 2016 WL 3440191, at *4 ("It is unreasonable to bill a client at an experienced attorney's full rate for this kind of administrative work.  In light of this, and the excessive time spent litigating the fee petition, these 12.4 hours will be excluded from Bel Air's award.").  Finally, hours spent on unnecessary travel must be stricken, especially when the task could have been achieved without the travel.  *See e.g., Spencer v. Central Servs., LLC*, Civil No. CCB-10-03469, 2012 WL 142978, at *3 (D. Md. 2012) ("4.6 hours will be reduced from the plaintiffs' total because, as the plaintiffs acknowledge, billing for travel time to Baltimore to file documents which could be filed by mail is not necessary (particularly at an attorney's billing rate)").

## 2.      Reasonable Rate

"An hourly rate is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 412 (D. Md. 2014) (citations omitted).  "In Appendix B to its Local Rules . . ., this Court has established rates that are presumptively reasonable for lodestar calculations." *Id.* (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000)); *Sibrian v. Superior Auto Detailing, LLC*, Civil Action No. 22-cv-00169-LKG, 2024 WL 2941267, at *6 (D. Md. 2024) (citing the 2023 edition of the Local Rules).  This Court routinely applies the Appendix B rates in FLSA litigation and has recently rejected some attempts to exceed these rates. *Guillen*, 2024 WL 1346838, at *3.

## B.      Subtracting Unsuccessful Claims From The Lodestar

After establishing the lodestar, the Court typically considers whether it is necessary to

subtract hours spent on any unsuccessful claims. *See Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002). It is not here since the Parties agreed, for purposes of the Motion, that Plaintiff is to be deemed the prevailing party. Defendants challenge only the reasonableness of Plaintiff's counsel's hours and rates.

### C.    The Degree of Success

In the final step of the analysis, the Court determines whether Plaintiff's level of success in this action makes counsel's expended hours a "satisfactory basis for making a fee award." *McAfee*, 738 F.3d at 92 (citations omitted). The Court "'compare[s] the amount of damages sought to the amount awarded.'" *Randolph v. Powercomm Constr., Inc.*, 715 F. App'x 227, 231 (4th Cir. 2017) (quoting *Mercer v. Duke Univ.,* 401 F.3d 199, 204 (4th Cir. 2005)). Where a plaintiff seeks damages under the federal FLSA and the state MWPCL and MWHL, even where the claims arise from the same set of facts, the Court often looks to the remedies available under the claims to determine level of success. As this Court (Coulson, J.) noted in *Amaya v. Power Design, Inc.*:

> Plaintiff's state claims, if successful, theoretically could have increased the amount of recoverable damages to those allowed in the treble damages provisions [of the MWPCL], and also could have led to injunctive relief. Losing the availability of such damages . . . could support a reduction based on a "lack of success" analysis . . . .

2018 WL 690838, at *5. Whether to reduce the award based on lack of success under such circumstances depends, at least in part, on the public purpose and benefits of the lawsuit. *Id.*; *see also Corral v. Montgomery County*, 91 F. Supp. 3d 702, 720 (D. Md. 2015) (reasoning a public purpose was served by the plaintiff's action since it caused the county's position to "evolve[] in favor of First Amendment rights."); *Mercer v. Duke University*, 401 F.3d 199, 208 (4th Cir. 2005) (reasoning the case served much more than the plaintiff's interests because it was "the first of its kind" that "will serve as a guidance to other schools facing similar issues.").

### III.      ARGUMENT

In his Motion for Attorneys' Fees and Costs, Plaintiff seeks an award of $104,519.00 in attorneys' fees and $4,893.49 in costs.  This amount is disproportionate to the case and excessive in light of the standard of review applicable in this district.  Defendants address the relevant three-step process and proposed deductions from the fee award, below, in turn.

### A.      The Lodestar Calculation

As noted above, the initial lodestar amount is calculated by multiplying a reasonable hourly rate times a number of hours reasonably expended.  *Guillen*, 2024 WL 1346838, at *1.

### 1.      Reasonable Hourly Rate

Plaintiff seeks an hourly rate of $475 for Howard Hoffman ("Mr. Hoffman") and $315 for Jordan Liew ("Mr. Liew").  ECF No. 73 at 9 (Hoffman), 10 (Liew).  The rate charged for Mr. Hoffman is in line with the presumptively reasonable rates established in Appendix B to the Local Rules of this Court.  Accordingly, Defendants do not seek an adjustment of Mr. Hoffman's hourly rate.  Defendants object to Mr. Liew's hourly rate of $315, however.

The *Johnson* factors applicable to a determination of an attorneys' reasonable hourly rate are factors 3 (skill required to properly perform the services), 4 (attorneys' opportunity costs in pressing the litigation), 5 (customary fee for like work), 6 (attorneys' expectations), and 9 (experience, reputation, and ability of the attorney).  *McAfee*, 738 F.3d at 89.  An analysis of these factors indicates a reduction in Mr. Liew's hourly rate is appropriate.

Mr. Liew is alleged to have been admitted to the Maryland Bar in 2016.  ECF No. 73 at 10.  When this action was filed (on September 22, 2021), Mr. Liew had been admitted to the Maryland Bar for less than five years.  The presumptively reasonable rates established in Appendix B to the Local Rules of this Court dictate that an attorney with less than five years of experience

should be awarded a reasonable hourly rate of between $150 and $225, and an attorney with five to eight years of experience should be awarded a reasonable hourly rate of between $165 and $300 per hour.  Even today, Mr. Liew has not reached eight years of experience, however, for the entire duration of this case, Mr. Liew has been charging an hourly rate that exceeds the presumptively reasonable hourly rate band for an attorney with eight years of experience.  Plaintiff suggests that the $315 rate sought is "slightly higher than Appendix B of the Local Rules," but that is not the case.  For work performed in 2022, for instance, Mr. Liew was charging $315 per hour, when the presumptively reasonable rate in Appendix B was no more than $225 (roughly 40% higher than the presumptively reasonable rate).  Plaintiff has not offered an affidavit or declaration from a local attorney to attest that a $315 rate was reasonable at any time during this litigation.  *Butler v. PP&G, Inc.*, Civil Action No. 20-3084-JRR, 2023 WL 6517593 (D. Md. Oct. 5, 2023) (claims that the presumptively reasonable rates should be exceeded "usually take[] the form of affidavits from other counsel attesting to their rates or the prevailing market rate.").

As Plaintiff admits, this was not a complicated case from a merits perspective.  ECF No. 73 at 18-19.  Plaintiff's counsel could not have anticipated a significant fee for a case where the maximum wage claim amounted to approximately $14,000.00.  ECF No. 1.  However, it was made more complicated, and the scope of the litigation increased significantly, as a result of Plaintiff's counsel's failure to ensure the preservation of relevant discovery material at the outset of the case, even when notified the information would be relevant.

Plaintiff claims lost opportunity costs during Mr. Liew's trial preparations, ECF No. 73 at 19, the Motion does not explain why Mr. Hoffman was unable to pick up the slack (particularly when he allegedly dedicated a total of 34 hours to the case over the course of more than three years).  Thus, the relevant *Johnson* factors support a reduction in Mr. Liew's hourly rate.

Plaintiff's contention that Appendix B is ten years old and should be adjusted for inflation is without merit.  ECF No. 73 at 15.  Plaintiff offers no legal authority to support an upward adjustment based on inflation, and Defendants have been unable to locate any.  Rather, this Court (Xinis, J.) rejected an inflationary adjustment to the Appendix B rates on an FLSA fee motion just one year ago and adjusted the requested rate to fall within the Appendix B guidelines.  *See Green v. Central Towing, Inc.*, Civil Action No. 8:21-cv-00030-PX, 2023 WL 2788623, at *2 (D. Md. Apr. 5, 2023).  It is also important to note that the Local Rules were amended effective July 1, 2023 (and by supplement in September 2023).  During that time, the nation was experiencing significant inflation, yet the Rules Committee did not adjust the rates.  Thus, it must be assumed that the Rules Committee did not believe that an inflationary adjustment was appropriate.

Absent any legitimate justification for awarding Mr. Liew an hourly rate so far outside the Appendix B guidelines, Defendants suggest that Mr. Liew's hourly rate should be calculated at blended rate of $260, given the large number of hours billed in 2022 and 2024.

## 2.      Hours Reasonably Expended

*Johnson* factors 1 (time and labor expended), 2 (novelty and difficulty of the questions), and 7 (time limitations imposed by the client or circumstances) generally relate to the reasonable hours expended in furtherance of a case.  As Plaintiff acknowledges, this case did not raise novel or difficult questions.  ECF No. 73 at 18.  And Plaintiff does not suggest that there were specific time limitations imposed by the client or circumstances.  Thus, those factors do not weigh in favor of a significant award.  With regard to the time and labor required in this case, the facts suggest this matter was substantially overbilled, and a significant reduction is appropriate.

### a.      Discovery

Plaintiff seeks compensation for 20.3 hours by Mr. Liew responding to written

interrogatories and requests for production and 5.8 hours for responding to requests for admissions. This was excessive given the general lack of detail included in the responses to interrogatories, Exhibit L, the small number of documents produced in response to requests for production (42 pages in total), Exhibit D ¶ 26, and the admitted lack of knowledge sufficient to respond to the admissions, Exhibit V – Plaintiff's Resps. To Reqs. For Adms. The Court should reduce these hours by roughly 40%, or by 10.4 hours. *See Guillen*, 2024 WL 1346838, at *8 (reducing requested hours by 40% for incurring "significantly more hours than is reasonable").

In addition, Plaintiff seeks compensation for 47.7 hours for Mr. Liew to review discovery documents over the course of the entire case. In this simple, straightforward wage-and-hour case, with relatively few responsive documents produced by the parties, the billing was excessive. By way of example, 47.7 hours of time at Mr. Liew's requested rate of $315 per hour alone exceeds the maximum value of Plaintiff's wage claims, even if treble damages were awarded. The Court should reduce these hours by roughly 40%, or by 19.1 hours. *See id.* (reducing requested hours by 40% for incurring "significantly more hours than is reasonable").

### b.     Discovery Disputes

On April 13, 2022, Plaintiff served a 25-page motion to compel answers to interrogatories and 10-page motion to compel first set of requests for production of documents. Exhibit G. Local Rule 104(8) requires a party to attempt to resolve a discovery dispute informally prior to serving a motion to compel. Plaintiff did not attempt to do so. The motions raised a number of purported issues not previously disclosed to Defendants' counsel. Ultimately, the parties were able to resolve the dispute quickly, and Plaintiff's counsel abandoned the motions to compel. Plaintiff seeks 6.5 hours for matters related to the motions to compel. Those hours should be stricken in their entirety.

c.      **Motions Practice**

Plaintiff is not new to the court system nor is he unfamiliar with litigation as he litigated a prior unpaid overtime action before commencing suit against Defendants. *See Fowler v. OC Jewish Deli and Diner, LLC*, Case No. 1:19-cv-01966-SAG.  In fact, he was represented by the same counsel in that action as he is in this case. *Id.*  Despite that experience, Plaintiff failed to take any affirmative steps to safeguard text messages he exchanged with Ms. Zegna during his tenure at Blacksmith, which Defendants contend served as contemporaneous, irrefutable evidence of his managerial status. *See generally* ECF No. 23.

That failure is observed in the record with Judge Coulson faulting Plaintiff for his inaction. ECF No. 29 at 7.  The Report and Recommendation states, in relevant part:

> However, where Plaintiff was on notice that text messages, as the primary form of 'written communication,' between him and his employer, would be important evidence of the nature and extent of Plaintiff's job duties at various points during his employment (a central issue in the case), it was not reasonable to simply maintain those text messages only on his phone without at least verifying that they were being backed up to a cloud service or otherwise taking affirmative steps to create a copy given the not uncommon occurrence of a phone getting damaged, lost, or stolen.

*Id.* (emphasis added).  Defendants therefore submit that the time Mr. Liew and Mr. Hoffman expended to address Plaintiff's failure should be completely stricken, this includes: 5.8 hours billed by Mr. Liew in preparing Plaintiff's Responses to Defendants' First Set of Requests for Admissions (all requests therein were focused on Mr. Fowler's recollection of his text messages), ECF No. 73-2 at 31; 35.2 hours for Mr. Liew and 0.5 hours for Mr. Hoffman billed in opposing Defendant's Motion for Sanctions And Or Other Relief As Spoliation Sanctions, *id.* at 32-35; and 10.1 hours by Mr. Liew and 0.4 hours by Mr. Hoffman billed in responding to Defendants' Objections to the Report and Recommendation, *id*. at 36-37.  Defendants thus request a reduction of 51.1 hours in Mr. Liew's time and 0.9 hours of Mr. Hoffman's time as a result of Mr. Fowler's

failure to preserve his text messages.

### d.      Trial Preparation

The parties reached a settlement in principle as to Plaintiff's liability claims on Friday, May 24, 2024.  Exhibit D ¶¶ 19-22.  Despite that agreement, Plaintiff's counsel insisted on continuing to prepare for trial, rather than simply review, propose edits to, and execute the settlement agreement, which would have obviated the need to continue pretrial preparations. Despite the agreement on material terms of a settlement, Mr. Liew charged 8.9 hours for trial preparation thereafter.  It was unreasonable to do under the circumstances, and the Court should strike those fees as unnecessary increasing the scope of the litigation.  Indeed, those hours were entirely avoidable had Plaintiff's counsel simply reviewed the settlement agreement when provided by Defendants' counsel.

### e.      Fee Petition

Plaintiff seeks compensation for 20.4 hours for the preparation of Plaintiff's fee petition (3.8 by Mr. Hoffman; 16.6 by Mr. Liew).  This item included 1.2 hours by Mr. Liew for reviewing "billing records for billing discretion" and 3.8 hours for Mr. Hoffman to, among other things, "review time records" and engage in multiple telephone conferences with Mr. Liew.  Plaintiff's Motion does not identify any actual entry that was reduced or excised as a result of a billing discretion review.  Instead, it just suggests a 5% across-the-board reduction is offered to "eliminate any unreasonable redundancy, duplication, or clerical task."  ECF No. 73 at 25.  Moreover, Plaintiff's counsel represent employees frequently in wage and hour litigation.  A significant portion of the fee petition is similar to fee petitions filed in other cases.  *Compare* Exhibit W – Pla's Motion for Attorneys' Fees and Costs in *Hoffman v. Bear Chase Brewing Co., LLC*, 1:21-cv-01443-DJN-WEF (E.D. Va. May 26, 2023), at 20 ("By any standard, this case was a smashing

success achieved by skill, determination, and persistence."), *with* ECF No. 73 at 23 ("Here, Plaintiff was substantially more successful, and by any standard, this case was a smashing success achieved by skill, determination, and persistence.").  Defendants suggest an approximate 30% reduction in the time spent drafting the fee petition to adjust for improper and overbilled charges. *See Guillen*, 2024 WL 1346838, at *13 (reducing request for fees related to fee petition by 30% in part because of redundant work and the fact that the fee petition was similar to a fee petition filed in another case).  This results in billable hours reduction of 1.1 hours for Mr. Hoffman and 5.0 hours for Mr. Liew.

### f.      Additional Reductions – Billing Discretion

A review of Plaintiff's billing records as a whole shows repeated instances of Mr. Liew performing clerical work or work more appropriately performed by an assistant.  Clerical work is non-compensable on a fee petition.  *See id.* at *12 (fee awards should not include "non-compensable tasks like clerical work").  The billing records show Mr. Liew scheduling and calendaring tasks and discussing scheduling and calendaring with Mr. Hoffman.  *See generally, e.g.,* ECF No. 73-2 at 6, 17.  Mr. Hoffman billed 1.2 hours total to drafting a letter regarding waiver of service and completing the service forms, as well as "assembl[ing] materials and transmit[ting them] via US Priority."  *Id.* at 3.  In addition, both attorneys billed for internal conferences on several occasions, including 0.7 hours for an internal conference regarding drafting of discovery. *Id.* at 8.  For duplicative, excessive, redundant and otherwise unnecessary work, Defendants submit that an additional 5% across-the-board reduction is appropriate.

### g.      Defendants' Proposed Initial Lodestar

Overall, Plaintiff seeks 298.0 hours for Mr. Liew and 34.0 hours for Mr. Hoffman. Factoring in the requested reductions described herein leaves 197.0 compensable hours for Mr.

Liew and 32.0 compensable hours for Mr. Hoffman.  Multiplying those hours by the reasonable hourly rates described herein results in a calculation of $64,450 ($49,250 for Mr. Liew and $15,200 for Mr. Hoffman).  Applying the additional 5% across-the-board discount for lack of billing discretion results in an initial lodestar of $61,227.50.

### B.    Subtraction of Fees Spent on Unsuccessful Claims

The second step in the fee award analysis involves the Court determining whether to subtract hours spent on any unsuccessful claims unrelated to successful ones.  *McAfee*, 738 F.3d at 91.  As all of Plaintiff's claims arise out of the same operative facts, Defendants do not seek a reduction in fees spent on unsuccessful claims (except to the extent relevant to the degree of success analysis, *infra*).

### C.    Reduction Based on Degree of Success

It is also appropriate to reduce the lodestar amount due to Plaintiff's failure to obtain full success on his claims.  As noted above, in step three of the fee award analysis, the Court "'compare[s] the amount of damages sought to the amount awarded.'"  *Randolph*, 715 F. App'x at 231 (citations omitted).  In his Complaint, Plaintiff sought treble damages under the MWPCL and MWHL.  ECF No. 1 at 9.  Plaintiff's specific claim in the Complaint was that he was owed $12,787.89 (including treble damages).  *Id.* ¶ 43.  Plaintiff then retained an expert, who increased that damages claim to $14,323.80.  Exhibit X – Plaintiff's Expert Report, May 9, 2022, at 3.  Through settlement, Plaintiff ultimately recovered $9,336.54, or 65.18% of the expert's calculation.[3]  In his Motion, Plaintiff claims he "sought and received, virtually everything he sought, including liquidated damages (2.0x damages) and a complete recovery under the FLSA."

---

[3]     On May 23, 2024, less than a month before trial was to begin, Plaintiff amended his expert report to suggest Plaintiff's claim (including treble damages) equaled $14,004.81.

ECF No. 73 at 23.  This position ignores the lack of success on the MWPCL and MWHL claims and the fact that Plaintiff expressly sought, in the Complaint and in two expert reports, treble damages that he did not recover.

This Court (Coulson, J.), has contemplated that such circumstances could support a reduction based on a "lack of success" analysis.  *Amaya*, 2018 WL 690838, at *5; *see also Matias Guerra v. Teixeira*, Civil Action No. TDC-16-0618, 2019 WL 3927323, at *10 (D. Md. Aug. 20, 2019) (reducing lodestar by 5% due to plaintiff's failure to recover treble damages).  In *Amaya*, 2018 WL 690838, at *5, the Court declined to substantially reduce the award because "several factors" specific to that case "mitigate[d] against a significant reduction."  Specifically, the plaintiffs in that case "clarified a previously unanswered question of law regarding the interaction between FLSA, [Davis-Bacon Act, and [Contract Work Hours and Safety Standards Act] that will benefit future plaintiffs similarly situated[,] meaning "the effect of a case reaches well beyond" the individual parties "and serves a public purpose . . . ." *Id.*  Given the benefit to the public of the case, the Court reduced the fee award by only 15% (rather than the 35% requested by the defendants).  *Id.*

Here, Plaintiff obtained a settlement of approximately 65% of the amount Plaintiff sought in the suit.  While that demonstrates some success, it is not a complete recovery.  Meanwhile, this case did not serve any public benefit or purpose.  On the other hand, the overall success of the case is marred by the fact that the settlement was obtained at least in part because Plaintiff and Plaintiff's counsel failed to preserve relevant text messages exchanged between the parties.  ECF No. 29 at 9.  Although Defendants were unable to prove to the Court's satisfaction that Plaintiff intended to deprive Defendants of the relevant communications, the Court nevertheless found a negligent failure to preserve relevant evidence.  *See generally id.*  The failure to preserve

substantially increased the scope and cost of the litigation.  Thus, awarding Plaintiff the fees he seeks would amount to a windfall, well out of proportion to the scope of the litigation as a whole.  *See Butler*, Civil Action No. DKC 10-2747, 2016 WL 1077158, at \*6 (D. Md. Mar. 18, 2016) ("The district court should reduce the award if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.") (internal quotation marks omitted) (quoting *McAfee*, 738 F.3d at 92).  Indeed, it would be contrary to a public purpose to award Plaintiff a full fee here; essentially, it would reward Plaintiff for the negligent failure to preserve documents—a basic requirement of litigation that all attorneys must follow and which is intended to ensure that litigation matters are resolved on their merits.  In order to adjust for a lack of total success on Plaintiff's total claim, accord with the public purpose of the Court's Rules, and avoid a windfall for Plaintiff's counsel, Defendants suggest that a 30% reduction from the adjusted lodestar is appropriate.  This would result in a final award of $42,859.25 ($61,227.50 x 70%).

### D.    Reduction in Claimed Costs

Plaintiff also seeks an award of costs in the amount of $4,893.49.  Relevant to this dispute, Plaintiff seeks $1,102.50 in costs for an expert witness; $64.68 for travel visiting Plaintiff while he was incarcerated at the Baltimore County Detention Center; and $429.25 for copying charges.  Defendants object to this Court awarding costs for these items.

First, Plaintiff seeks expert witness fees in the amount of $1,102.50.  However, Plaintiff cannot recover expert witness costs in an FLSA case.  In *Gortat v. Capala Brothers, Inc.*, 795 F.3d 292, 296 (2d Cir. 2015), the Second Circuit explained that "[t]he Supreme Court has made clear on multiple occasions that, absent explicit statutory authorization, a district court may not award reimbursement for expert fees beyond the allowances authorized by 28 U.S.C. § 1920, as limited by 28 U.S.C. § 1821" *i.e.*, per diem and travel allowances.  In conjunction with a detailed analysis,

the Court concluded that the FLSA "does not authorize district courts to award costs reimbursing plaintiffs for expert fees."  *Id.*  Specifically, the FLSA's reference to costs "does not constitute explicit statutory authorization to award expert fees."  *Id.*  Because expert fees are not recoverable in FLSA litigation, the Court must decline to award them here.

Second, Plaintiff seeks $64.68 for mileage traveling to visit Plaintiff while he was incarcerated, to obtain a signature for a declaration.  Plaintiff's billing statements indicate that Plaintiff's counsel was able to communicate with Plaintiff while he was incarcerated.  ECF No. 73-2 at 31-33.  Plaintiff's counsel was also in touch with Plaintiff's mother regarding Plaintiff's status, and there is no reason to believe that Plaintiff's mother could not have visited Plaintiff to obtain the signature and then mailed or scanned the signed declaration to Plaintiff's counsel. Defendants was not responsible for Plaintiff's incarceration, and Defendants should not be responsible for paying for Plaintiff's counsel to travel to Baltimore County to sign a declaration while incarcerated.  The Court should deny those costs in the amount of $64.68.

Plaintiff also seeks payment for 1,717 copies at a rate of $0.25 per page.  Plaintiff does not disclose why these costs were incurred or explain how they were reasonable in light of the circumstances of the case.  Indeed, almost all communications between Plaintiff's counsel and Defendant's counsel were conducted by telephone or email.  Plaintiff bears the burden of establishing the costs are reasonable litigation expenses, and Plaintiff has failed to do so.  The Court should deny those costs in the amount of $429.25.

Against this backdrop, Defendants submit that Plaintiff's request for an award of costs should be limited to $3,297.06.

## IV.        CONCLUSION

Based on the foregoing, Defendants request that the Court enter an attorneys' fees award of no more than $42,859.25, and a costs award of no more than $3,297.06.

Respectfully submitted,

Dated: July 2, 2024

/s/ Matthew E. Feinberg
Matthew E. Feinberg, Esq. (Bar No. 17745)
*mfeinberg@pilieromazza.com*
Matthew T. Healy, Esq. (Bar No. 20999)
*mhealy@pilieromazza.com*
**PILIEROMAZZA PLLC**
1001 G Street, N.W., Suite 1100
Washington, D.C. 20001
Ph:  (202) 857-1000
Fx:  (202) 857-0200

*Counsel for Defendants, Tenth Planet, Inc.*
*and Justine Zegna*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 2, 2024, a copy of Defendants', Tenth Planet, Inc. and

Justine Zegna, foregoing Opposition to Plaintiff's Motion for Attorneys' Fees and Costs was

electronically filed via the CM/ECF system, which will send a notification of such filing to:

Howard B. Hoffman, Esq.
Jordan S. Liew, Esq.
**HOFFMAN EMPLOYMENT LAW, LLC**
600 Jefferson Plaza, Suite 204
Rockville, Maryland, 20852

*Attorneys for Plaintiff, Thomas
Fowler*

/s/ Matthew E. Feinberg
Matthew E. Feinberg (Bar No. 17745)