## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**THOMAS FOWLER,**

                                \*

    *Plaintiff*,                  \*

    v.                        \*        **Civil Case No: 1:21-cv-02430-JRR**

**TENTH PLANET, INC., et al.,**

                                \*

    *Defendants*.

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## REPORT & RECOMMENDATION

This Report and Recommendation addresses Plaintiff's, Thomas Fowler, Motion for Attorneys' Fees and Costs (ECF No. 73) (the "Motion"). United States District Judge Julie R. Rubin referred this matter to the undersigned on July 22, 2024, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302. *See* (ECF No. 78). The Motion is fully briefed (ECF Nos. 74, 77) and the undersigned believes that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, I respectfully recommend that Plaintiff's Motion be granted in part and denied in part.

### I.      BACKGROUND

Relevant for purposes of assessing Plaintiff's motion, Plaintiff filed the present lawsuit on September 22, 2021, against Defendants, Tenth Planet, Inc. (d/b/a Blacksmith Bar & Restaurant) and Justine Zegna. (ECF No. 1). Plaintiff alleged therein that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* ("MWPCL") by failing to pay Plaintiff certain overtime wages that he was entitled to as Defendants' employee from roughly April 2019 through

November 2020.  *See generally id.*  This case progressed through discovery and Judge Rubin eventually issued a trial scheduling order on November 8, 2023, with a prospective jury trial date of June 17 through June 20, 2024.  (ECF No. 39).  As that trial date approached, the parties jointly advised the Court via email on May 29, 2024, that they had reached a settlement agreement and requested that the Court stay this case pending submission and approval of the parties' joint motion for FLSA settlement approval.  (ECF No. 69).  Judge Rubin granted that request on May 30, 2024, stayed all pending deadlines (including the upcoming trial), and directed the parties to file their motion for FLSA settlement approval by June 4, 2024.  *Id.*  The parties obliged, and Judge Rubin granted the parties' joint motion for FLSA settlement approval on June 4, 2024.  (ECF Nos. 70, 71).  Judge Rubin then directed the parties to file any attorney fee petitions by June 18, 2024, leading to the present Motion.  (ECF No. 72).

## II.    DISCUSSION

Prevailing parties in an FLSA action are "entitled to an award of attorney's fees and costs that they establish as reasonable."  *Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 242 (4th Cir. 2010); *see also* 29 U.S.C. § 216(b).  "The amount of the attorney's fees, however, is within the sound discretion of the trial court."  *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984).  "To properly calculate an attorney's fees award, courts undertake a three-step process: (1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs."  *Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 22 (4th Cir. 2019).  The Court considers twelve factors, known as the "*Johnson* factors," in assessing the reasonableness of the requested fee:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the

time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). "While the *Johnson* factors assist a court in calculating a reasonable fee award, a district court need not 'consider *all* twelve *Johnson* factors.'" *Reyazuddin v. Montgomery Cnty., Md.*, No. CV DKC 11-951, 2022 WL 4608331, at *10 (D. Md. Sept. 30, 2022) (quoting *Martin v. Mecklenburg Cnty.*, 151 F. App'x 275, 283 (4th Cir. 2005)) (emphasis added); *Erny on behalf of India Globalization Cap., Inc. v. MuKunda*, No. CV DKC 18-3698, 2020 WL 3639978, at *4 (D. Md. July 6, 2020); *cf. Brooks v. Roberts*, 501 F. Supp. 3d 103, 112 (N.D.N.Y. 2020) ("However, the trial court need not robotically recite and make separate findings as to all twelve of the *Johnson* factors.") (quotation omitted). Maryland law further provides that prevailing plaintiffs in MWHL cases are entitled to reasonable attorney fees and that prevailing plaintiffs in MWPCL cases may be awarded reasonable counsel fees and costs. *See* Md. Code Ann., Lab. & Empl. §§ 3-427(d)(1)(iii), 3-507.2(b).

### 1. *The Reasonableness of Plaintiff's Fee Petition — Lodestar Amount*

"The first step in determining the reasonable attorney's fees is to calculate the lodestar— that is, the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Smith v. Touching Angels Healthcare, Inc.*, No. CV RDB-17-0673, 2018 WL 1035769, at *2 (D. Md. Feb. 23, 2018) (internal quotations omitted); *Randolph*, 780 F. App'x at 22.

### a. Rates

Plaintiff submits that the following hourly rates are reasonable for those involved in the prosecution of this case:

1. $475.00/hour for Mr. Howard B. Hoffman's services as a Principal of Hoffman Employment Law, LLC who was admitted to the Maryland Bar in December 1999 and this Court's Bar in January 2020, and whose practice has primarily focused on "prosecuting and defending wage and house cases and other employment law cases"; and

2. $315.00/hour for Mr. Jordan S. Liew's services as an Associate Attorney with Hoffman Employment Law, LLC who was admitted to the Maryland Bar in 2016 and this Court's Bar in June 2019.

(ECF No. 73 at 11–12; ECF No. 73-1 at 1).[1]

"To determine reasonable hourly rates, a court 'looks to the prevailing market rates in the relevant community.'" *Reyazuddin*, 2022 WL 4608331, at *11 (quoting *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 551 (2010)). "While a court may rely on affidavits from local attorneys opining on the reasonableness of a plaintiff's requested rates, it may also take judicial notice of its own knowledge of the local legal market. And in the District of Maryland, that market knowledge is embedded in . . . [the] Local Rules, Appendix B, which provides rates that vary based on an attorney's experience level." *Id.* (quotations and citations omitted); *see also Gonzalez v. Caron*, No. CIV.A. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011). While these "guidelines" are "not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges." *Gonzalez*, 2011 WL 3886979, at *2. The Appendix B guidelines are as follows: $150-225 for lawyers admitted to the bar less than five years; $165-300 for lawyers admitted for five to eight years; $225-350 for lawyers admitted for nine to fourteen years; $275-425 for lawyers admitted for fifteen to nineteen years; and $300-$475 for lawyers admitted for twenty years or more. The rate for paralegals and law clerks is $95-150.

---

[1] When the undersigned cites to a particular page number or range, the undersigned is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

Defendants do not contest the reasonableness of Mr. Hoffman's hourly rate given his years of experience and consequently his presumptively reasonable hourly rate.  (ECF No. 74 at 13). However, Defendants do argue for a downward adjustment of Mr. Liew's rate.  Specifically, Defendants argue that Mr. Liew's rate should be no higher than $260.00/hour because (1) Mr. Liew was admitted to the Maryland Bar for less than five years when this lawsuit was filed, (2) Mr. Liew has consistently been admitted to the Maryland bar for less than eight years while this lawsuit was pending, and (3) "Plaintiff offers no legal authority to support an upward adjustment based on inflation, and Defendants have been unable to locate any." *Id.* at 14–15.  Plaintiff retorts that Mr. Liew's hourly rate of $315.00 is appropriate because "Plaintiff's counsel is entitled to be paid at current, rather than historic, market rates."  (ECF No. 77 at 7).

Plaintiff is correct in that the Fourth Circuit has explained that, "[i]n awarding attorney fees, a district court is required to account for the effect of delay in payment on the value of the fee.  The delay factor may be accounted for either by using a fee rate based on the current market or by using the historical rate with reasonable interest added." *Ohio River Valley Env't Coal., Inc. v. Green Valley Coal Co.*, 511 F.3d 407, 419 (4th Cir. 2007) (quotation omitted); *see also Daly v. Hill*, 790 F.2d 1071, 1081 (4th Cir. 1986); *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, No. CIV.A. MGJ95309, 2001 WL 1636517, at *11 (D. Md. Dec. 12, 2001).  Defendants' argument, however, is different.  Defendants argue that Mr. Liew's rate was never within the Local Rule guidelines based on his years of experience.

The declarations submitted in connection with Plaintiff's Motion indicate that Mr. Liew has been practicing law since 2016. *See, e.g.*, (ECF No. 73-1 at 9).  Further research into the Maryland Judiciary's records indicates that Mr. Liew was admitted to practice on December 14,

2016.[2] Thus, the presumptively reasonable rate for Mr. Liew's services from December 14, 2016, to December 14, 2021, was no more than $225.00/hour, and his presumptively reasonable rate from December 15, 2021, through the present is no more than $300.00/hour.  Given Plaintiffs' counsels detailed explanation regarding how Mr. Liew "was principally responsible for all aspects of the case," as confirmed by the detailed time records regarding Mr. Liew's responsibilities and actions throughout this case, the undersigned recommends awarding Mr. Liew an hourly rate at the high ends of those guidelines.  (ECF No. 73 at 12–13, 18).  In other words, the undersigned recommends that Mr. Liew be awarded an hourly rate of $225.00/hour for his efforts prior to December 14, 2021, and an hourly rate of $300.00/hour for his efforts after December 14, 2021.

Plaintiff's counsel argues for the slight upward departure in awarding Mr. Liew a universal hourly rate of $315.00/hour for several reasons: (1) to account for inflation; (2) because Mr. "Liew is approaching his ninth year of admission and practice"; and (3) "while Appendix B is presumptively reasonable, in general fee matrices may be considered somewhat crude and should provide a useful starting point but not be considered gospel."  (ECF No. 73 at 17–18); *see also Chaten v. Marketsmart LLC*, No. PX-19-1165, 2020 WL 4726631, at *3 (noting that a party seeking attorney fees outside the Local Rules' presumptively reasonable rates "bears the burden of establishing the reasonableness of those fees").  Regarding the first contention, this Court has previously (and recently) rejected the argument that fees should necessarily be awarded in excess of the Local Rules' guidelines to account for inflation.  *See, e.g.*, *Green v. Cent. Towing, Inc.*, No. 8:21-CV-00030-PX, 2023 WL 2788623, at *2 (D. Md. Apr. 5, 2023).  This Court has also noted that "[i]ndeed, where these rates have been consistently published in the Local Rules, application of hourly rates within the guideline ranges is consistent with the sixth *Johnson* factor, the attorney's

---

[2] *See* Maryland Attorney Listing, Md. Judiciary, https://www.mdcourts.gov/attysearch.

expectations at the outset of the litigation." *Matamoros Avila v. Marlin Lighting LLC*, No. CV TDC-22-0049, 2023 WL 5279328, at *3 (D. Md. Aug. 16, 2023).  On the other hand, the Court has recognized that "where the Court has not recently adjusted these rates for inflation, *and where the rates are lower than the standard billing rates for Plaintiffs' attorneys, the Court finds that the reasonable hourly rates are those at the high end of the guideline ranges set forth in the Local Rules*." *Id.* (emphasis added); *Castillo Pacheco v. Mezeh-St. Mary's LLC*, No. CV TDC-21-2521, 2023 WL 5411071, at *3 (D. Md. Aug. 22, 2023).  Thus, even assuming that the Appendix B rates have not been adjusted for inflation *and* assuming that Mr. Liew's proffered rate is lower than the standard billing rate for Plaintiff's counsels' attorneys generally, the proper outcome would be to award Mr. Liew the "high end" of his applicable guideline range, which in turn would still be $225.00/hour and $300.00/hour, respectively.  The undersigned therefore finds this argument unpersuasive to justify the upward departure that Plaintiff's counsel seeks for Mr. Liew's services, albeit recognizing that Plaintiff's counsel seeks only a modest upward departure.

Regarding the second contention, Plaintiff provides no support for the assertion that Mr. Liew's hourly rate for work previously performed at his previous level of experience should be adjusted upward given that he will soon be entitled to a presumptively higher hourly rate based on projected years of experience at a future date, even if in the near future.  And regarding the third contention, this Court has consistently applied the Local Rules in determining the reasonable hourly rate of litigants.  The undersigned finds no reason to depart from that practice in the face of Plaintiff's citation to a single case in a neighboring jurisdiction in which that court expressed disdain for fee matrices under certain circumstances.  Accordingly, the undersigned recommends finding that Mr. Liew's reasonable hourly rate for his work in this case is $225.00/hour for his efforts prior to December 14, 2021, and $300.00/hour for his efforts after December 14, 2021.

b.  Hours Expended

"The party seeking fees must provide detailed records that specify the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged."  *Guillen v. Armour Home Improvement, Inc.*, No. CV DLB-19-2317, 2024 WL 1346838, at *4 (D. Md. Mar. 29, 2024) (quotations omitted).  Accordingly, fee applicants "bear the burden of providing sufficient detail in their records to explain and support their requests for fees and costs."  *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 645 (D. Md. 2012); *see also Almendarez v. J.T.T. Enters. Corp.*, No. CIV. JKS 06-68, 2010 WL 3385362, at *5 (D. Md. Aug. 25, 2010) ("The burden to show reasonableness rests on the fee applicant.").  Nevertheless, "the Court will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge."  *Argonaut Ins. Co. v. Wolverine Const., Inc.*, 976 F. Supp. 2d 646, 657 (D. Md. 2013).

The undersigned will organize his analysis based on the categories described in Plaintiff's fee itemization.  These sections address several *Johnson* factors, including the time and labor expended, the novelty and difficulty of the questions raised, the skill required to properly perform the legal services rendered, the experience, reputation, and ability of the attorneys, and fee awards in comparable cases.

1.  Case Development

Plaintiff's counsel billed 27.4 compensable hours on case development for a total of $9,254.50.  (ECF No. 73-2).  Specifically, Mr. Hoffman billed 3.9 compensable hours for a total of $1,852.00, and Mr. Liew billed 23.5 compensable hours for a total of $7,402.50.  Defendants' opposition does not identify any specific entries under this category warranting a reduction, nor do Defendants argue that Plaintiff's counsels' efforts for case development should be reduced.

However, in light of the above discussion regarding Mr. Liew's proper hourly rate, the undersigned believes a modification of this category is appropriate. Of the 23.5 compensable hours that Mr. Liew billed for case development, 8.7 of those hours occurred prior to December 15, 2021. Adjusting Mr. Liew's rate to $225.00/hour for those efforts based on his experience at the time, the undersigned believes that Mr. Liew should be awarded $1,957.50 for his case development efforts prior to December 15, 2021. Adjusting Mr. Liew's rate to $300.00/hour for the remaining 14.8 compensable hours, Mr. Liew should be awarded $4,440.00 for his case development efforts as of December 15, 2021, onward. Accordingly, the undersigned recommends that Plaintiff's counsel be awarded a total of $8,249.50 rather than $9,253.50 for case development.

2.    Pleadings

Plaintiff's counsel billed 4.1 compensable hours on pleadings for a total of $1,291.50, all of which was billed by Mr. Liew prior to December 15, 2021. (ECF No. 73-2). Defendants do not identify any particular issues with these entries, but the undersigned nevertheless recommends adjusting Plaintiff's counsels' fee award for pleadings based on Mr. Liew's then-applicable $225.00/hour rate. Accordingly, the undersigned recommends awarding Plaintiff's counsel $922.50 for pleading efforts rather than $1,291.50.

3.    ADR/Settlement Efforts

Plaintiff's counsel billed a total of 17.4 compensable hours in the amount of $7,273.00 for ADR/settlement efforts. (ECF No. 73-2). Specifically, Mr. Hoffman billed 11.2 compensable hours totaling $5,320.00, and Mr. Liew billed a total of 6.2 compensable hours totaling $1,953.00. Defendants do not specifically argue that any particular ADR/settlement billing entries are unreasonable. However, Defendants express disdain with Plaintiff's counsels' settlement efforts in the introductory pages of their opposition. Specifically, Defendants note that Plaintiff's counsel

did not accept Defendants' initial settlement offer in November 2021; that Plaintiff's counsel rejected another settlement offer in October 2023 without a counteroffer; and that the parties continued working on pretrial submissions in May 2024 while the parties negotiated the exact terms of their then-agreed upon settlement.  (ECF No. 74 at 1–3, 5–7)

"Although a district court 'has discretion to consider settlement negotiations in determining the reasonableness of fees[,] . . . it is not required to do so.'"  *Ranmarine v. Rainbow Child Dev. Ctr., Inc.*, No. 17-CV-02261, 2022 WL 16709764, at *8 (D. Md. Nov. 4, 2022), *report and recommendation adopted*, No. DKC-17-2261, 2023 WL 1416031 (D. Md. Jan. 31, 2023).  The Court is generally hesitant to consider settlement negotiations in determining the reasonableness of fees because doing so conflicts with Local Rule 607.4:

> The Court's ADR process is confidential.  Unless otherwise agreed by the parties and the Court, no disclosure shall be made to anyone, including the judicial officer to whom the case is assigned, of any dispute resolution communication that in any respect reveals the dispute resolution positions of the parties or advice or opinions of neutrals.  No such communication shall be admissible in any subsequent proceeding except as permitted by the Federal Rules of Evidence.

Loc. R. 607.4 (D. Md. 2023).  "Recognizing such, courts have approved consideration of a parties' settlement position during a determination of fees in a few limited circumstances, where: 1) the complaint was silent as to the total amount of damages sought, thus reference to settlement was necessary to determine the amount of damages the plaintiff originally sought; 2) it is apparent the plaintiff failed to seriously engage in settlement negotiations; [and] 3) the parties' conduct, along with other evidence demonstrated counsel refused to settle the case so that they could generate additional fees."  *Ranmarine*, 2022 WL 16709764, at *8 (citations omitted).

Here, the undersigned does not believe that any of the circumstances discussed in *Ranmarine* justify reducing Plaintiff's counsels' fee award regarding ADR/settlement efforts.  Plaintiff's complaint was not silent as to the amount of damages sought (ECF No. 1 at 6).  And

10

although Defendants take issue with Plaintiff's counsels' negotiation methods and timeliness, it is not readily apparent to the undersigned based off the information submitted in connection with this Motion that either Plaintiff's counsel failed to seriously engage in settlement negotiations, or that their conduct indicated a refusal to settle the case simply to generate additional fees.  The undersigned therefore does not recommend adjusting the fee award for ADR/settlement efforts on this ground.  However, the undersigned does recommend reducing this award based on the proper hourly rate for Mr. Liew as discussed above.  Mr. Liew billed 0.5 compensable hours for settlement efforts prior to December 15, 2021, which should be compensated at $112.50, and billed the remaining 5.7 compensable hours after December 15, 2021, which should be compensated at $1,710.00.  Accordingly, the undersigned recommends awarding Plaintiff's counsel $7,142.50 for ADR/settlement efforts.

4.   Discovery

Plaintiff's counsel reports spending 83.1 compensable hours on discovery matters for a total bill of $26,768.50.  Specifically, Mr. Liew billed 79.4 compensable hours for a total of $25,011.00, and Mr. Hoffman billed 3.7 compensable hours for a total of $1,757.50.  (ECF No. 73-2).  Counsel represents that this total encompasses:

> [T]he drafting and revision of interrogatories and requests for documents served on Defendants, the drafting and revision of responses to Defendants' interrogatories, requests for production of documents and requests for admission, review of Defendants' interrogatory responses and document production, identification of deficient responses, drafting a draft motion to compel discovery responses, conferring with Defense counsel both by email and telephonically to resolve discovery issues raised by both Parties, working with Plaintiff's expert in the calculation of damages and preparation of an expert report, drafting Plaintiff's Rule 26(a)(2) expert designation, and drafting supplemental discovery responses.

(ECF No. 73 at 14).  All of Mr. Liew's discovery charges occurred after December 15, 2021.  Accordingly, the undersigned identifies that Mr. Liew's total compensation for his discovery

efforts should not exceed $23,820.00 (79.4 compensable hours at a compensation rate of $300.00/hour).

Defendants raise several objections to Plaintiff's counsels' discovery charges. First, Defendants argue that Mr. Liew billing 20.3 compensable hours to respond to written interrogatories and requests for production and 5.8 compensable hours for responding to requests for admissions is excessive "given the general lack of detail included in the responses to the interrogatories . . . the small number of documents produced in response to requests for production (42 pages in total) . . . and the admitted lack of knowledge sufficient to respond to the admissions." (ECF No. 74 at 15–16). Second, Defendants argue that Mr. Liew billing 47.7 hours to review discovery documents over the course of the entire case is excessive because this was a "simple, straightforward wage-and-hour case, with relatively few responsive documents produced by the parties." *Id.* at 16. Finally, Defendants argue that all 6.5 hours spent related to two motions to compel[3] should be stricken in their entirety because Plaintiff's counsel did not abide by Local Rule 104.8 in raising those motions, because the "motions raised a number of purported issues not previously disclosed to Defendants' counsel," and because Plaintiff ultimately abandoned those motions after the parties resolved the disputes raised therein. *Id.* Defendants therefore request that the 26.1 hours that Mr. Liew spent regarding the interrogatories and requests for production/admission be reduced by 40% (or by 10.4 hours); that the 47.7 hours that Mr. Liew spent reviewing discovery materials also be reduced by 40% (or by 19.1 hours); and that the Court strike all 6.5 hours related to the motions to compel. *Id.* at 16. Plaintiff's counsel responds that these discovery charges are reasonable because that level of time and attention was warranted,

---

[3] Specifically, the parties indicate that Plaintiff served a motion to compel answers to interrogatories and a motion to compel responses to their first set of requests for production of documents. Reviewing the immediate docket demonstrates that these motions were never formally filed with the Court.

because "Defendants are downplaying the informational density of the records," and because they actually complied with Local Rule 104.8 in serving their motions to compel.  (ECF No. 77 at 8).

Regarding the time that Mr. Liew spent dealing with interrogatories and requests for production/admissions, it is not readily apparent to the undersigned that Mr. Liew expended "significantly more hours than is reasonable" as Defendants suggest.  *Guillen*, 2024 WL 1346838, at *8.  Defendants assert that Plaintiff's first set of interrogatory responses has a "general lack of detail," but examining Plaintiff's first set of interrogatory responses indicates the opposite.  (ECF No. 74 at 16).  Rather, Plaintiff's first set of interrogatory responses is riddled with precise objections to certain interrogatories, detailed legal arguments supporting those objections with abundant case law, and otherwise appears to address each interrogatory with specific answers to the best of counsels' ability.  *See generally* (ECF No. 74-12).  Nor does the undersigned find the size of Plaintiff's document productions particularly dispositive of whether the time spent thereon was excessive, as Defendants do not further indicate that Plaintiff's production was seriously deficient or that Mr. Liew's efforts in obtaining and producing those documents were excessive notwithstanding the fact that Mr. Liew ultimately did not produce enough documents for Defendants to be satisfied with his time spent.  Further, the undersigned is not convinced that Mr. Liew's time spent on responding to Defendants' requests for admissions was excessive simply because Mr. Liew did not have sufficient information to answer every request for admission.  The undersigned therefore sees no reason to reduce the compensation available to Mr. Liew for his time spent regarding the interrogatories and requests for production/admission.

However, the undersigned is receptive to Defendants' argument regarding Mr. Liew's time spent on reviewing discovery materials.  Careful review of the docket—including all exhibits submitted in connection with this Motion—suggests that there was not a particularly voluminous

amount of discovery produced in this case.  Combined with Plaintiff's own concession that "this case did not raise any novel questions," 47.7 hours appears excessive.  (ECF No. 73 at 20).  Plaintiff's reply argues that the time spent reviewing discovery documents was proper because Mr. Liew discovered numerous deficiencies with Defendants' timesheets and paycheck records, but those deficiencies (as set forth in the exhibits submitted in connection with this Motion) do not justify the excessive amount of time spent repeatedly reviewing the same discovery materials as set forth in Plaintiff's fee itemization.  Further, Mr. Liew also billed to review discovery materials numerous times when logging time regarding depositions, further indicating to the undersigned that Mr. Liew billed more than required for reviewing discovery materials.

Turning to the motions to compel, Plaintiff's counsel correctly identifies that they were not necessarily required to confer with Defendants regarding discovery disputes before serving Defendants with motions to compel.  *See* Loc. R. 104.8(b) (D. Md. 2023) ("Counsel are encouraged to confer with one another before *or immediately after* a motion to compel is served.") (emphasis added).  Nor do the 6.5 hours for matters related to the motions to compel seem excessive merely because the parties were able to resolve the disputes informally and without Court intervention.  That is precisely the positive outcome that Local Rule 104.8 contemplates, and the undersigned finds Defendants' reasoning insufficient to punish Plaintiff for following the Court's Local Rules in settling discovery disputes without Court intervention.

In light of the above analysis, the undersigned recommends reducing Plaintiff's fee award for discovery efforts by 15% to account for the excessive amount of time spent reviewing discovery materials.  The undersigned then effectively recommends awarding Plaintiff's counsel $21,740.88 for their discovery charges ($23,820.00 plus $1,757.50 multiplied by 0.85 to account for the 15% reduction).

5.  Motions Practice

Plaintiff's counsel reports spending 108.9 compensable hours related to motions practice for a total charge of $34,575.50.  (ECF No. 73-2).  Specifically, Mr. Liew billed 107.2 compensable hours for a total of $33,768.00, and Mr. Hoffman billed 1.7 compensable hours for a total of $807.50.  Taking into account the appropriate billing rate for Mr. Liew, who had at least five years' experience throughout his entire motions practice, Mr. Liew's maximum fee award for motions practice should be no higher than $32,160.00.

Defendants challenge the above fees based on the parties' prior dispute regarding spoliation of evidence.  To briefly summarize for purposes of this Motion, the undersigned previously issued a Report and Recommendation (at Judge Rubin's request) assessing a motion for sanctions filed by Defendants, which argued for dismissal of Plaintiff's lawsuit for failure to preserve certain text message data relevant to Plaintiff's employment title.  *See generally* (ECF No. 29).  In assessing the merits of Defendants' motion for sanctions, the undersigned recommended that Judge Rubin deny the motion because Defendants had not carried their burden under Rule 37(e)(2) in establishing that Plaintiff's failure to preserve certain text message data was done with an "intent to deprive" Defendants of that information.  *See id.* at 10–11.  Of note, the undersigned opined in that Report and Recommendation that Plaintiff's failure to maintain certain text message data was unreasonable in light of the data's importance to the case and the means through which Plaintiff could have preserved that data (for instance, uploading the data to a cloud server).  *Id.*

Defendants now use the undersigned's admonition of Plaintiff's failure to preserve that data as justification for striking:

[1] 5.8 hours billed by Mr. Liew in preparing Plaintiff's Responses to Defendants' First Set of Requests for Admissions (all requests therein were focused on [Plaintiff's] recollection of his text messages); [2] 35.2 hours for Mr. Liew and 0.5 hours for Mr. Hoffman billed in opposing Defendant's Motion for Sanctions And

Or Other Relief As Spoliation Sanctions . . . and [3] 10.1 hours by Mr. Liew and 0.4 hours by Mr. Hoffman billed in responding to Defendants' Objections to the Report and Recommendation.  Defendants thus request a reduction of 51.1 hours in Mr. Liew's time and 0.9 hours of Mr. Hoffman's time as a result of [Plaintiff's] failure to preserve his text messages.

(ECF No. 74 at 17).

As the last sentence above from Defendants' opposition suggests, Defendants effectively seek sanctions against Plaintiff for his failure to preserve the text message data in the form of reducing Plaintiff's counsels' attorney fee award.  In assessing Defendants' spoliation motion, the undersigned expressly found that no sanctions were appropriate for Plaintiff's conduct, and that Judge Rubin was in the best position "to decide to the extent to which the parties can introduce evidence and testimony regarding the missing text messages and the circumstances of their unavailability."  (ECF No. 29 at 10–11).  Judge Rubin subsequently adopted that Report and Recommendation in its entirety over Defendants' objection.  (ECF Nos. 30, 32, 33).

Defendants present no persuasive grounds for the undersigned to depart from that prior ruling.  Nor do they present a compelling reason to discredit counsels' efforts in responding to Defendants' objections to the undersigned's Report and Recommendation.  However, the undersigned does agree with Defendants that Mr. Liew's time spent related to opposing Defendants' motion is beyond what was reasonably required.  Although the specific issue presented within that motion is not one routinely involved in FLSA cases and therefore required additional research and efforts to fully brief given the facts of this case, 35.2 hours by Mr. Liew in drafting that opposition is excessive.  As evidenced by the extensive amount of legal authority block quoted and cited therein, the legal principles governing that motion were not novel or particularly complex.  Rather, Plaintiff's opposition consisted largely of offering a competing statement of facts and applying well established legal standards to those facts.  As the undersigned

16

is particularly familiar with the issues argued in that motion given that the undersigned issued a Report and Recommendation assessing its merits, the undersigned believes a 25% reduction is warranted regarding Mr. Liew's time in opposing that motion.  Accordingly, the undersigned recommends that Mr. Liew be awarded 26.4 hours for his efforts in opposing that motion.  Stated differently, the undersigned recommends striking 8.8 hours of compensable time from Plaintiff's counsels' discovery fees, thereby reducing Plaintiff's counsels' motions practice award by $2,640.00.  As Defendants do not raise any other issues with counsels' billing entries regarding motions practice, the undersigned therefore recommends awarding Plaintiff's counsel a fee of $30,327.50 for motions practice.

### 6.  Depositions

Plaintiff's counsel reports spending 30 compensable hours preparing for and attending depositions, totaling $9,450.00, all of which was billed by Mr. Liew.  (ECF No. 73-2).  Adjusting Mr. Liew's hourly rate to $300.00/hour because all deposition tasks occurred after December 14, 2021, Mr. Liew's total compensation for deposition related tasks should not exceed $9,000.00. Defendants do not raise any specific objections to any of Plaintiff's counsels' entries regarding depositions, so the undersigned recommends that Plaintiff's counsel be awarded $9,000.00 in fees for deposition related tasks.

### 7.  Trial Preparation

Plaintiff's counsel billed 39.0 compensable hours for trial preparation, totaling $13,837.00. (ECF No. 73-2).  Specifically, Mr. Liew billed 29.3 hours for a total of $9,229.50 and Mr. Hoffman billed 9.7 hours for a total of $4,607.50.  Adjusting Mr. Liew's hourly rate to $300.00/hour given that all trial preparation occurred after December 14, 2021, Mr. Liew should not receive more than $8,790.00 in fees for trial preparation.

Defendants only object to the 8.9 compensable hours that Mr. Liew billed after the parties "reached a settlement in principle as to Plaintiff's liability claims on Friday, May 24, 2024." (ECF No. 74 at 18). Defendants assert that such time was wholly unnecessary in light of the purported settlement agreement and requests that all 8.9 hours be stricken. *Id.* Plaintiff's counsel responds that such efforts were appropriate because the May 24, 2024, communications did not result in a finalized settlement offer and pretrial submissions were due by May 27, 2024, and counsel did not want to risk missing that deadline while the parties hammered out the precise settlement details. (ECF No. 77 at 9–10). Moreover, Plaintiff's counsel represents that it drafted and forwarded a proposed Offer of Judgment as an "expedient vehicle to immediately memorialize the agreed-upon amount for Plaintiff's claim" with the intention of "bypassing the need to draft and squabble over a settlement agreement, while notifying the Court immediately of these developments[.]" *Id.* at 10. According to Plaintiff's counsel, they then "had no choice but to continue working on the Pretrial Documents" because Defendants subsequently rejected the proposed Offer of Judgment, preferring instead to submit a formal settlement agreement. *Id.* Plaintiff's counsel further affirms that the draft settlement agreement(s) sent by Defendants at that time "required substantial editing, including the addition of three new sections, spanning two and a half pages." *Id.* at 11.

The undersigned does not believe that any reduction is warranted for these 8.9 hours. Exhibit 7 to Plaintiff's reply demonstrates that the parties were both still preparing their own pretrial submissions (such as verdict sheets) as of the morning of May 27, 2024. *See* (ECF No. 77-7). Additionally, those documents illustrate that Plaintiff's counsel forwarded proposed additional language to be included in the parties' settlement agreement at approximately 4:43 PM on May 27, 2024. *Id.* at 1–2. In that same communication, Plaintiff's counsel also expressed that they were not under the impression that any binding settlement agreement had yet been reached

18

because the parties had yet to agree on including the specific additional language proposed by Plaintiff's counsel therein. *Id.* Defendants did not agree to those proposed additions until the day after, May 28, 2024, at which time the parties' pretrial submissions were already due. *Id.* Accordingly, the undersigned does not believe that it was unreasonable for Plaintiff's counsel to timely complete their pretrial submissions in light of the parties still jostling over the final language of any settlement agreement that they would enter into when those submissions were due. The undersigned therefore recommends awarding Plaintiff's counsel a total of $13,397.50 in fees regarding trial preparation.

### 8.  Fee Petition

Plaintiff's counsel billed 20.4 hours in connection with the present Motion for a total amount of $7,034.00. (ECF No. 73-2). Specifically, Mr. Liew billed 16.6 compensable hours for a total of $5,229.00 in fees, and Mr. Hoffman billed 3.8 compensable hours for a total of $1,805.00 in fees. Adjusting Mr. Liew's hourly rate to $300.00/hour given that all fee petition work occurred after December 14, 2021, Mr. Liew should not receive more than $4,980.00 in fees for preparing the present Motion. Additionally, Plaintiff's counsel seeks an additional $6,857.50 in fees incurred in drafting their reply in support of the present Motion.[4] The additional billing records submitted in connection with that reply highlight that Mr. Liew billed 18 compensable hours in connection with the reply for a total of $5,670.00, and Mr. Hoffman billed 2.5 compensable hours in connection with the reply for a total of $1,187.50. (ECF No. 77-9). Adjusting Mr. Liew's hourly rate to $300.00/hour for his efforts in submitting the reply indicates that Mr. Liew should not receive more than $5,400.00 for such efforts, making the maximum recoverable amount for

---

[4] Although Plaintiff's reply requests a total of $6,873.67 in fees incurred in submitting that reply, adding all the compensable charges regarding Plaintiff's reply with reference to the billing records in ECF No. 77-9 indicates that Plaintiff's counsel billed a total of $6,857.50 regarding the reply.

Plaintiff's reply no more than $6,587.50.  Defendants argue that the charges regarding the present Motion are excessive and request a "billable hours reduction of 1.1 hours for Mr. Hoffman and 5.0 hours for Mr. Liew."  (ECF No. 74 at 19).

"A district court may award the prevailing party 'fees on fees': 'fees incurred in litigating the question of fees.'"  *Guillen*, 2024 WL 1346838, at *13 (quoting *Mercer v. Duke Univ.*, 401 F.3d 199, 202 n.3 (4th Cir. 2005)).  "Nevertheless, it is within the district court's 'discretion to determine exactly what amount would compensate the party sufficiently for the time spent on the fees phase of a lawsuit,' including by reducing the award to eliminate time spent unreasonably." *Id.* (quoting *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995)).

The undersigned agrees with Defendants that Plaintiff's counsels' fees in connection with the present Motion are excessive.  The standard for awarding attorney fees in FLSA cases is well established and both attorneys staffing Plaintiff's case affirm that they have many years of experience handling such matters.  Roughly one-third of Plaintiff's Motion simply lists the legal standards applicable to such motions (of which there is an abundance of caselaw from this District), whereas most of the remaining portions of the Motion generally summarizes counsels' tasks throughout the case and provides an aggregate number of compensable hours for each category discussed above.  Nor is application of the *Johnson* factors particularly complex given the facts and procedural history of this case.  Accordingly, it was excessive for counsel to spend over 20 hours drafting that Motion, and the undersigned agrees with Defendants that 1.1 hours of Mr. Hoffman's time and 5 hours of Mr. Liew's time should be stricken.  Thus, Plaintiff's counsel should receive a total award of $4,762.50 in fees regarding the present Motion (11.6 compensable hours for Mr. Liew at $300.00/hour plus 2.7 compensable hours for Mr. Hoffman at $475.00/hour).

The undersigned also finds that the fees incurred in connection with Plaintiff's reply are excessive. Despite Plaintiff's reply being about half the length of the initial Motion, containing less legal analysis, and often re-asserting factual assertions raised in the initial Motion, Plaintiff's reply was almost as expensive as the initial Motion. The undersigned believes that a 50% reduction is warranted regarding fees incurred in submitting Plaintiff's reply. Accordingly, the undersigned concludes that Plaintiff's counsel should be awarded a total of $8,056.25 in fees regarding the present Motion and the reply ($4,762.50 in fees for the Motion and $3,293.75 in fees for the reply).

9.  Billing Judgement

"A prevailing party seeking fees 'has a duty to exercise billing judgment to exclude from a fee request hours that are excessive, redundant or unnecessary.'" *Guillen*, 2024 WL 1346838, at *14 (quoting *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 74 (4th Cir. 1995)); *see also Spell*, 852 F.2d at 767–71; *Harwood v. Am. Airlines, Inc.*, 37 F.4th 954, 960–61 (4th Cir. 2022). "Billing judgment requires billing accurately, with supporting documentation, for compensable tasks only." *Guillen*, 2024 WL 1346838, at *14.

Defendants request "an additional 5% across-the-board reduction" because "A review of Plaintiff's billing records as a whole shows repeated instances of Mr. Liew performing clerical work or work more appropriately performed by an assistant." (ECF No. 74). The undersigned agrees. This Court does not award non-compensable, excessive, or unreasonable fees. *See Reyazuddin*, 2022 WL 4608331, at *14 ("To determine reasonable hours expended, a court must 'exclude from its . . . fee calculation' hours 'that are excessive, redundant, or otherwise unnecessary.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Regarding non-compensable work, "Clerical work is not billable to an adversary." *Castillo Pacheco*, 2023 WL 5411071, at *4. Non-compensable clerical tasks include, *"inter alia*, filing documents with the

21

Court, organizing documents, or assembling binders." *Ramirez v. 316 Charles, LLC*, No. CV SAG-19-03252, 2021 WL 662185, at *3 (D. Md. Feb. 19, 2021); *see also Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 929–30 (E.D. Va. 2015) (giving examples of non-compensable clerical work like "collating and filing documents with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings and preparing sets of orders, document organization, creating notebooks or files and updating attorneys' calendars, assembling binders, emailing documents or logistical telephone calls with the clerk's office"); *cf. PNC Bank, N.A. v. Starlight Props. & Holdings, LLC*, No. 6:13-CV-408-ORL, 2014 WL 2574040, at *12 (M.D. Fla. June 9, 2014) ("Work that is purely clerical in nature, such as preparing civil cover sheets or summonses, and the like, are not compensable hours.").

Here, there are numerous instances in which Plaintiff's counsel either (1) billed exclusively for non-compensable tasks, or (2) employed block billing practices with non-compensable tasks therein, making it impossible for the undersigned to determine how to properly exclude non-compensable tasks from such entries. To name just a few:

- Counsels' charges on September 22, 2021, to review the Complaint that had already been filed (ECF No. 73-2 at 2);

- Counsels' charges on September 27, 2021, and October 8, 2021, for reviewing routine Court orders (ECF No. 73-2 at 3);[5]

- Counsels' charges on October 19, 2021, including "printing out summons and other pleadings" (ECF No. 73-2 at 3); and

---

[5] *See April J. v. Kijakazi*, No. CV 21-1584-BAH, 2022 WL 4017381, at *2 (D. Md. Sept. 2, 2022) (reducing fees where "Plaintiff's timesheets include numerous tasks that can only be described as clerical, including the purported 'review' of numerous routine docket entries that should take mere seconds, not six minutes," such as orders memorializing judicial case assignments and brief orders, and reducing fees associated with excessive time spent reviewing the plaintiff's case file); *Allyssa L. v. Comm'r, Soc. Sec. Admin.*, No. CV MDLB-20-329, 2022 WL 171546, at *1 (D. Md. Jan. 14, 2022

- Counsels' charges on March 11, 2022, March 14, 2022, July 14, 2022, October 12, 2022, November 15, 2022, and October 18, 2023, including reviewing counsels' calendar (ECF No. 73-2 at 9–10, 17, 20, 24, 39).

To be very clear, the undersigned does not believe that counsels' billing was in any way insincere or exaggerated. However, careful examination of Plaintiff's counsels' fee itemization indicates that it does include somewhat redundant, excessive, or otherwise clerical-related billing at certain times throughout the course of this case. The undersigned therefore agrees that a 5% reduction is warranted to account for this billing judgment. In fact, Plaintiff's counsel likewise acknowledges that a "5% across-the-board discount" is appropriate. (ECF No. 73 at 27). The above recommendations include fee awards for case development ($8,249.50), pleadings ($922.50), ADR ($7,142.50), discovery ($21,740.88), motions practice ($30,327.50), depositions ($9,000.00), trial preparation ($13,397.50), and the present Motion ($8,056.25), totaling $98,836.63. Thus, after accounting for a 5% reduction of that figure based on billing judgment, the undersigned recommends calculating the initial lodestar figure at $93,894.80.

### 2. The Reasonableness of Plaintiff's Fee — Claim Reduction(s)

The next step in computing Plaintiff's award of attorney fees is to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88. "Defendants so not seek a reduction in fees spent on unsuccessful claims," so the undersigned does not recommend any. (ECF No. 74 at 20).

### 3. The Reasonableness of Plaintiff's Fee — Degree of Success

"Finally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009)). "[T]he most critical factor in

determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006). "While quantifying success is 'challenging,' courts nonetheless '*must* compare the amount of damages sought to the amount awarded.'" *Fiallos v. Hamzah Slaughter House, LLC*, No. 1:20-CV-03577-JMC, 2022 WL 16923859, at *4 (D. Md. Nov. 14, 2022) (quoting *Randolph*, 780 F. App'x at 23) (emphasis supplied in *Randolph*).

Here, Plaintiff initially sought to recover $4,262.63 in unpaid wages along with "statutory penalties," making Plaintiff's total requested relief $12,787.89 at the outset of this litigation. (ECF No. 1 at 6). In other words, Plaintiff sought a total award of 3x his alleged unpaid wages, which included treble damages under the MWPCL. Plaintiff ultimately recovered approximately two-thirds of that total amount via the settlement agreement. *See generally* (ECF No. 70). Defendants argue that this level of success warrants a 30% reduction at this stage because: (1) Plaintiff did not recover the max amount of damages which he sought, including treble damages under the MWPCL *i.e.* Plaintiff did not achieve "a complete recovery"; (2) "this case did not serve any public benefit or purpose"; and (3) "the overall success of the case is marred by the fact that the settlement was obtained at least in part because Plaintiff and Plaintiff's counsel failed to preserve relevant text messages exchanged between the parties." (ECF No. 74 at 20–22).

Defendants are correct that Plaintiff did not achieve full recovery of *all* his claimed damages. But the undersigned nevertheless recognizes that Plaintiff did receive a substantial amount of those claimed damages. Further, Defendants present no authority indicating that reducing an FLSA attorney fee award is necessary where a plaintiff voluntarily foregoes his request for treble damages because he instead opts to settle the case without the need to consume additional litigant and judicial resources via trial. The Court previously remarked in similar circumstances that:

> [W]hen a case ultimately resolves by way of settlement, it is inappropriate for a court to simply compare the damages set forth in the complaint with the amount of the settlement.  If a plaintiff alleges a $100,000.00 loss in his or her complaint, fairly estimates a 50% risk of loss at trial, and settles the claim pre-discovery for $50,000.00, it is difficult to overly criticize the settlement based on the fact that it was for an amount less than the complaint's *ad damnum*. Thus, if a plaintiff in such a situation today can achieve a settlement amount that in good faith reasonably estimates the risk of loss and the value of being paid today rather than at the time of any verdict, it is difficult for the Court to regard such a result as significantly unsuccessful.  This is especially true in an FLSA case where the parties—and, ultimately, the Court itself—agreed that the settlement amount represented a reasonable compromise of disputed claims.

*Amaya v. Power Design, Inc.*, No. CV 14-00446-JMC, 2018 WL 690838, at *5 (D. Md. Feb. 2, 2018).  The undersigned therefore finds Defendants' argument unpersuasive that the Court should substantially reduce the above lodestar figure because Plaintiff settled his claims for an amount lower than that demanded in his Complaint.

As to Defendants' second point, the undersigned agrees that it is not readily apparent how, if at all, this case served any particularly compelling interests under the FLSA and its State counterparts.  While Plaintiff's recovered wages surely advanced the purposes of all three statutes, the "social value of the judgment is basically limited to the damages recovered" for Plaintiff. *Guillen*, 2024 WL 1346838, at *19.

Finally, the undersigned again finds no persuasive reason to depart from his prior recommendation that Plaintiff should not be sanctioned regarding the text message data spoliation issue previously litigated.  Although Defendants maintain that Plaintiff's conduct "substantially increased the scope and cost of the litigation," Plaintiff's conduct obviously did not preclude the parties from amenably settling their claims as evidenced by their judicially approved settlement agreement.  (ECF No. 74 at 22).  In light of the foregoing, the undersigned recommends at this step that the above lodestar figure be reduced by an additional 5%.  *See, e.g.*, *Matias Guerra v. Teixeira*, No. CV TDC-16-0618, 2019 WL 3927323, at *10 (D. Md. Aug. 20, 2019) ("The only

loss Plaintiff had was the Court not awarding him treble damages.  In light of that, I recommend a modest reduction of fees amounting to 5% of the total amount to avoid any windfall to Plaintiff's counsel.").[6]  As Plaintiff's lodestar figure was $93,894.80 up until this point in the analysis, the undersigned therefore recommends that Plaintiff's counsel ultimately receive $89,200.06 in attorney fees for their efforts in this case.

### 4.  Costs

Plaintiff's counsel also requests $4,893.49 in costs.  (ECF No. 73 at 26).  These costs stem from the initial filing fee, postage, deposition transcripts, certain expert witness expenses, service of process costs, mileage to visit Plaintiff at the Baltimore County Detention Center, and copy charges.  *Id.* at 16.  Plaintiff's counsel submits that these costs were all "necessarily incurred in the prosecution of this case and would be billed to fee paying clients."  *Id.*  Further, counsel asserts that "Plaintiff has *waived* the right to recover the costs associated with electronic legal research utilized by Hoffman Law (WESTLAW)."  *Id.* (emphasis in original).  Defendants object to the expert witness costs, travel costs, and copying charges.  (ECF No. 74 at 22).

The FLSA and its Maryland state counterparts provide that prevailing parties in wage and hour cases may recover reasonable costs incurred from pursuing claims thereunder.  *See* 29 U.S.C. § 216(b); Md. Code Ann., Lab. & Empl. §§ 3-427(d)(1)(iii), 3-507.2(b).  Local Rule 109.1 further provides that:

> In any case where any costs other than the fee for filing the action are being requested, the bill of costs shall be supported by affidavit and accompanied by a memorandum setting forth the grounds and authorities supporting the request.  Any vouchers or bills supporting the cost being requested shall be attached as exhibits.
>
> A party objecting to any requested costs shall submit a memorandum in opposition to the request within the time permitted by L.R. 105.2.  If no such memorandum is

---

[6] As the quotation suggests, this was a Report and Recommendation prepared by Judge Day at Judge Chuang's request. Judge Chuang subsequently adopted that Report and Recommendation in full.

> filed within the required time, the Clerk may, without notice or hearing, tax all of
> the requested costs.

Loc. R. 109.1(b)–(c) (D. Md. 2023). "The Court has the same discretion over an award of costs as it has over an award of fees." *Guillen*, 2024 WL 1346838, at *23 (citing *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 549 (4th Cir. 1998)). "The costs that may be charged to losing defendants include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Almendarez*, 2010 WL 3385362, at *7 (quoting *Spell*, 852 F.2d at 771).

Regarding the expert witness fees, Supreme Court precedent establishes that "no statute will be construed as authorizing the taxation of witness fees and costs unless the statute refer[s] explicitly to witness fees." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006) (quotation omitted); *see also Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) ("We hold that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."). In turn, this Court has repeatedly identified that expert witness costs are outside the scope of recoverable expenses under those statutes. *See, e.g.*, *Advance Bus. Sys. & Supply Co. v. SCM Corp.*, 287 F. Supp. 143, 164 (D. Md. 1968), *aff'd and remanded*, 415 F.2d 55 (4th Cir. 1969); *Smith v. M/V SIRIO*, No. H-79-1354, 1982 WL 195638, at *3 (D. Md. Oct. 12, 1982) (noting that "Ordinarily, expert witness fees are not taxable as costs" under 28 U.S.C. § 1920); *Levy v. Saint Gobain Ceramiques Avancees Desmarquest*, No. CV PWG-04-492, 2006 WL 8456786, at *4 (D. Md. Oct. 16, 2006) ("It is well established; however, that the fees paid to experts for their professional services are not allowable as costs under 28 U.S.C. § 1920."); *Scott v. United States*, No. CV WGC-06-3003, 2009 WL 10685248, at *2 (D. Md. July 8, 2009) ("Moreover expert testimony is typically compensated by the party calling the witness and thus is

not a taxable expense under 28 U.S.C. § 1920.").  The undersigned then turns to the language of 29 U.S.C. § 216(b), which makes no reference to witness fees let alone an express authorization to award such expenses as costs to a successful litigant.  Nor do the Maryland State law counterparts include such express statutory authorization.  *See* Md. Code Ann., Lab. & Empl. §§ 3-427(d)(1)(iii), 3-507.2(b).  Accordingly, Plaintiff's counsel should not be awarded the $1,102.50 it seeks in costs for expert witness expenses.[7]

Regarding Defendants' other objections, "[c]osts charged to losing defendants may include 'necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying.'"  *Manna v. Johnny's Pizza, Inc.*, No. CIV. CCB-13-721, 2014 WL 794357, at *7 (D. Md. Feb. 25, 2014) (quoting *Almendarez*, 2010 WL 3385362, at *7); *see also Scott*, 2009 WL 10685248, at *3 ("Copying fees are recoverable if the papers were necessarily obtained for use in the case.  Fees to duplicate documents used at trial and copies furnished to the court and opposing counsel are recoverable.  Copies made solely for the convenience of counsel are not ordinarily allowed.").

---

[7] The undersigned recognizes Plaintiff's counsels' citation to one single case from this Court in which the Court was receptive to awarding expert expenses as "fees" rather than costs.  *See* (ECF No. 77 at 14).  However, the undersigned finds that holding inapplicable here in light of the above Supreme Court precedent and express language of 29 U.S.C. § 216(b), both of which the Court did not previously consider in awarding those expenses at the time.  The undersigned's conclusion further comports with a wealth of persuasive authority from other jurisdictions on the matter. *See, e.g.*, *Gortat v. Capala Bros.*, 795 F.3d 292, 296–97 (2d Cir. 2015) ("Because 29 U.S.C. § 216(b) of the FLSA does not explicitly authorize courts to award reimbursement for expert fees, it does not permit a court to award such fees beyond the allowances recoverable pursuant to 28 U.S.C. § 1920 as limited by 28 U.S.C. § 1821.  For this reason, the district court erred in awarding $10,425 in costs for expert fees pursuant to this provision."); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 405 (5th Cir. 2002) ("There is no express statutory authority in the ADEA or the FLSA to award expert witness fees for other than court-appointed expert witnesses.  The district court did not err in refusing to award the Plaintiffs expert witness fees."); *Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 594–95 (10th Cir. 1992) ("29 U.S.C. § 216(b) . . . does not provide 'explicit statutory authority' to award expert witness fees to Plaintiffs . . . Moreover, 'costs of the action' are specifically defined in 28 U.S.C. § 1920, and do not include expert witness fees unless the expert is appointed by the court.") (quoting 29 U.S.C. § 216(b); 28 U.S.C. § 1920(6)); *Bankston v. State of Ill.*, 60 F.3d 1249, 1257 (7th Cir. 1995) ("We agree that [*Gray*'s conclusion] is the proper statutory construction of the FLSA fee-shifting provision.  It provides that winning plaintiffs are entitled to reasonable attorneys' fees and the costs of the action, but says nothing specific about expert witness fees.").

The undersigned believes that counsel should be awarded the travel costs but not the copying costs. Plaintiff's counsel represents—as supported by the details in their fee itemization—that they incurred those travel costs because it was necessary to visit Plaintiff while incarcerated to discuss this case as well as obtain Plaintiff's signature for his declaration in support of Plaintiff's opposition to Defendants' prior motion for sanctions. (ECF No. 77 at 14–15; ECF No. 25-2). As such, these costs should be recoverable. However, Plaintiff's counsel has not met its burden in demonstrating that the copying expenses were reasonable. Although copying expenses generally are allowed where necessary for use in the case, Plaintiff's counsel provides no further information regarding their copying other than providing a single paged, heavily redacted document denoting the number of copies that counsel made during the course of this case. *See* (ECF No. 73-5). Nor does Plaintiff's initial Motion clearly explain why those copies were necessary, or if/how they were used in this case. Further, Plaintiff's counsel declined to respond to Defendants' objection to the copying costs in their reply despite countering Defendants' arguments regarding the expert witness fees and travel costs. *See* (ECF No. 77 at 14–15). Accordingly, Plaintiff's counsel should not receive the requested $429.25 in copying costs. *See Scott*, 2009 WL 10685248, at *3 (declining to award copying costs where the Court was "unable to determine whether the papers were necessarily obtained for use in the case.") quotation omitted). The proper recovery for costs in this action is therefore $3,361.74 ($4,893.49 minus $1,102.50 (expert fees) minus $429.25 (copying fees)).

### 5. *Post-Judgment Interest*

28 U.S.C. § 1961(a) provides that "Interest shall be allowed on any money judgment in a civil case recovered in a district court." In FLSA cases specifically, this Court has previously determined that the appropriate date from which such post-judgment interest begins accruing

follows the date which the Court issues a decision regarding the attorney fees and costs a prevailing party may be entitled to.  *See Fiallos*, 2022 WL 16923859, at *5; *Mancilla v. Chesapeake Outdoor Servs., LLC*, No. 1:22-CV-00032-JMC, 2024 WL 2803947, at *14 (D. Md. May 31, 2024).  Given this precedent and acknowledging that FLSA actions usually require determinations of attorney fees separate and after judgments on the merits, the undersigned recommends that any post-judgment interest here shall begin to accrue fourteen (14) days from the date of Judge Rubin's Memorandum Opinion and/or Order ruling on the present Motion.

## III.     CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 73) be **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the undersigned recommends awarding Plaintiff's counsel $92,561.80 for their efforts in this case, comprising of $89,200.60 in reasonable attorney fees and $3,361.74 in reasonable costs.

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b) (D. Md. 2023).


Date: <u>August 9, 2024</u>                                     <u>            /s/            </u>
                                                                            J. Mark Coulson
                                                                            United States Magistrate Judge